## COMMONWEALTH vs. LINDA HILL.

No. 98-P-1457.

Suffolk. September 8, 1999. - March 30, 2000.

Present: JACOBS, DREBEN, & BECK, JJ.

*Controlled Substances. Police,* Unlawful arrest. *Threshold Police Inquiry. Search and Seizure,* Threshold police inquiry, Probable cause, Arrest. *Constitutional Law,* Reasonable suspicion, Probable cause, Arrest. *Arrest. Probable Cause. Practice, Criminal,* Dismissal, Record.

Dismissal of a criminal complaint was not the appropriate remedy for the supposed unlawful arrest of the accused, where no evidence was obtained as a result of the arrest. [61-62]

The record of a hearing on a motion to dismiss a criminal complaint was sufficient to demonstrate that police officers had reasonable suspicion to stop the driver of a motor vehicle and then, based on the spontaneous statements of the driver, probable cause to arrest the driver. [62-64]

The written findings of fact of a District Court judge, stipulated to be correct, provided an adequate record for appellate review of the judge's grant of the defendant's motion to dismiss a criminal complaint, and it was not necessary for the tape recording of the proceeding to be transcribed. [64-65]

COMPLAINT received and sworn to in the Roxbury Division of the District Court Department on February 10, 1997.

A motion to dismiss was heard by *Marie T. Buckley,* J.

*Gerald P. Stewart,* Assistant District Attorney, for the Commonwealth.

*Willie J. Davis* for the defendant.

BECK, J. A Roxbury District Court complaint charged the defendant with distributing cocaine in violation of G. L. c. 94C, § 32A, and doing so within 1,000 feet of a school. G. L. c. 94C, § 32J. She filed a motion to dismiss pursuant to Mass.R.Crim.P. 13(c), 378 Mass. 872 (1979), on the ground that "the [c]omplaint was obtained pursuant to an unlawful arrest; and, since no evidence was derived from the unlawful arrest, dismissal is the appropriate remedy." After an evidentiary hearing at which four

Boston police officers testified, a District Court judge allowed the defendant's motion. The Commonwealth appeals, see Mass. R.Crim.P. 15(a)(1), as appearing in 422 Mass. 1501 (1996), arguing that there were specific, articulable facts to support the stop of the defendant's car and that the evidence revealed as a result of the stop established probable cause for the subsequent arrest. (The defendant also filed a motion to suppress which was denied for lack of standing. That motion is not at issue here.)

The facts as the motion judge found them are undisputed. Shortly before 10:00 P.M. on the evening of February 8, 1997, Boston police Detectives Michael Feeney and David Martinez, both assigned to the Boston police department's drug control unit, were on routine patrol in plain clothes in an unmarked car. "[T]heir duty was the investigation of drug activity in the area." At the Stony Brook MBTA station, they saw an African-American man drive up in a Ford Bronco and use the telephone. There was a woman passenger in the Bronco as well. Although they did not know the man driving the Bronco, Feeney decided to keep the man under surveillance. The man then drove into the parking lot of a McDonald's restaurant in Egleston Square and parked facing the restaurant. Believing that the man was going to make a drug buy, Feeney radioed for assistance with surveillance and took up a position on Washington Street.

Officers Fermain Cardona and Jacqueline Craven, also of the drug control unit and also in plain clothes in an unmarked car, responded to Feeney's call. They parked in the McDonald's parking lot four or five car lengths from the Bronco. There were no other cars between them. The only person Cardona saw in the Bronco was the African-American male, who later identified himself as Tyrone Simpson.

Within a very short time, Cardona saw a black Toyota Camry enter the parking lot and stop next to the Bronco, facing away from McDonald's. Simpson got out of the Bronco and stopped momentarily at the driver's side window of the Camry. Simpson then went around the Camry, opened the front passenger door, placed his left hand on the roof of the car, and leaned into the Camry with his right hand extended. Simpson then stood up and closed the front passenger door of the Camry. His right hand seemed to be closed.

Cardona was watching with binoculars, but he could not see the driver of the Toyota well enough to determine the driver's gender. Nor did he see anything exchanged between the parties.

Cardona's view of the Camry was entirely blocked by Simpson's body.

After Simpson got back into the Bronco, Cardona and Craven approached the Bronco. Cardona saw a plastic bag containing a white substance in Simpson's right hand. Cardona identified himself as a police officer, opened the driver's side door of the Bronco, and asked Simpson to give him the bag. Simpson complied. Cardona asked Simpson to get out of the Bronco and arrested him. An African-American woman then appeared, identified herself, and said that she had been in McDonald's buying something.

Cardona had called Feeney on his radio and told Feeney about the events in the parking lot. When the Camry left the parking lot, Feeney continued his surveillance, now of the Camry. At some point Cardona told Feeney, again by radio, that they had found cocaine on the driver of the Bronco. Feeney then asked for help from a marked cruiser to stop the Camry. The police stopped the Camry at the intersection of Seaver Street and Humbolt Avenue. The driver of the Camry was the defendant.

When she was stopped, the defendant said, "I don't believe this. I'm a Boston cop." Feeney told the defendant that they were, as the judge put it, "conducting a drug investigation on the events which had just taken place in the parking lot at McDonald's. The [d]efendant responded that she had just met a friend there who owed her ten dollars. She had a ten dollar bill in her hand." Feeney radioed for a sergeant and ultimately the defendant was arrested. Both the defendant and her car were searched and no drugs were found. On the way to the station for booking, the defendant said, "I can't believe I'm being arrested for selling." At the time of his arrest in the parking lot, Simpson volunteered the information that he had not gotten the cocaine from the defendant. (He repeated the statement at the police station.) At first he "lied about giving the [d]efendant money. Finally, he admitted that he had given money to her, but continued to deny that he received cocaine from her."

The judge found that "[a]ll the officers involved were very experienced members of the [drug control unit]. Each had been involved in many drug investigations and made many drug arrests. They characterized the area of Egleston Square as a high crime area where many drug violations occurred." The judge identified the issue before her as being "whether the officers in

their collective observations had probable cause to arrest or even stop the defendant." She concluded that "[t]he officers appear to have acted on two observations . . . a telephone call from a public phone in plain view by a man who was unknown to the officers" and the activity in the parking lot of McDonald's which Cardona "assumed [was] a drug transaction." The judge deemed neither of these observations "suspicious." The judge also noted that the police assumed the defendant had given the man driving the Bronco the substance he was holding and that it was this assumption that was the basis for stopping the defendant's car, which led to her arrest.

The judge determined that the officers' conclusions were based only on their suspicions of the area in general as a high crime area. She found there was no evidence that the officers had seen the defendant or the driver of the Bronco "engage in any unlawful or even suspicious behavior which would constitute probable cause for the stop of the defendant [sic]." The judge appears to have concluded that if the evidence at the time of the defendant's arrest was insufficient to support the arrest, it was also insufficient to support the complaint, and that dismissal was the appropriate remedy.

As we noted at the outset, the defendant based her motion to dismiss on a claim of unlawful arrest. She argued that dismissal is the appropriate remedy because no evidence was obtained from the unlawful arrest. But the law does not provide dismissal as an alternative remedy when there is no "fruit" of a Fourth Amendment violation. See *United States* v. *Crews*, 445 U.S. 463, 470-471 (1980). "An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution." *Id.* at 474. See *Santiago* v. *Fenton*, 891 F.2d 373, 387 (1st Cir. 1989) ("[l]ack of probable cause to arrest would not preclude a prosecution for the same offense"); *Commonwealth* v. *Jacobsen*, 419 Mass. 269, 275 (1995). See also Smith, Criminal Practice and Procedure § 64 (2d ed. 1983 & Supp. 1999). Not only is there no allegation of police misconduct that would justify such a drastic remedy, but the defendant makes no claim that government action will impair her ability to obtain a fair trial. See *Commonwealth* v. *Fontaine*, 402 Mass. 491, 495 (1988).

We do not mean to suggest that a defendant must inevitably go to trial in order to be relieved of a complaint that is legally insufficient. See *Commonwealth* v. *Valchuis*, 40 Mass. App. Ct.

556, 560 (1996) ("a complaint cannot issue until there has been a determination of probable cause to believe that a crime was committed and that it was committed by the defendant"), citing Smith, Criminal Practice and Procedure §§ 629-632 (2d ed. 1983). However, "where dismissal is requested because of the claimed insufficiency of the evidence of guilt, it cannot be ordered unless the Commonwealth agrees to join in the affidavit procedure [described in *Commonwealth* v. *Brandano*, 359 Mass. 332, 337 (1971),] or in a stipulation of the facts. A pretrial order or judgment of dismissal for the claimed insufficiency of the Commonwealth's evidence cannot be sustained in any case where the Commonwealth fail[s] or refuse[s] to stipulate that the appellate record contains a statement of all the Commonwealth's contemplated evidence." *Commonwealth* v. *L.A.L. Corp.*, 400 Mass. 737, 738-739 (1987), quoting from *Rosenberg* v. *Commonwealth*, 372 Mass. 59, 63 (1977). "To hold otherwise would, in some cases, deny to the prosecution its privilege to establish evidence of guilt by compelling testimony at the trial from witnesses who were not cooperative prior to trial." *Rosenberg* v. *Commonwealth, supra.*

As to the issue of whether there was probable cause, which both parties briefed as the primary argument and which warrants consideration, see *Commonwealth* v. *Carapellucci*, 429 Mass. 579, 583 (1999), the parties assume, and we agree, that the cases governing stop and frisk and probable cause to arrest apply. In such cases "we accept the motion judge's subsidiary findings of fact absent clear error, and we view, with particular respect, the conclusions of law that are based on them." *Commonwealth* v. *Kennedy*, 426 Mass. 703, 705 (1998). However, the judge's rulings of law that "bear on issues of constitutional dimension, are open for reexamination by this court." *Commonwealth* v. *Bottari*, 395 Mass. 777, 780 (1985). Indeed, "our duty is to make an independent determination of the correctness of the judge's application of constitutional principles to the facts as found." *Commonwealth* v. *Mercado*, 422 Mass. 367, 369 (1996).

As the Commonwealth suggests, we begin our analysis by considering whether the officers had a legally sufficient basis for stopping the defendant's car following their observations in the McDonald's parking lot. We are guided by the following constitutional principles.

"[A] police officer may stop an individual and conduct a

threshold inquiry if the officer reasonably suspects that such individual has committed, is committing, or is about to commit a crime. To qualify as 'reasonable,' the officer's suspicion 'must be based on specific, articulable facts and reasonable inferences drawn therefrom.' The standard is objective: 'would the facts available to the officer at the moment of the seizure or the search "warrant a [person] of reasonable caution in the belief" that the action taken was appropriate?' " *Commonwealth* v. *Mercado*, 422 Mass. at 369 (citations omitted).

The specific facts on which the police based their stop of the defendant have been described as follows: "(1) a vehicle pulled up and an interaction occurred between someone in the vehicle and someone [in the parking lot], who apparently retrieved something before concluding the interaction with the vehicle's occupant; (2) [the interaction occurred] in a place known by the police officer[s] as a place of high incidence of drug traffic; and (3) [was] witnessed by an experienced officer, who had made numerous drug arrests [although not necessarily in the neighborhood] and considered the event as [suggesting] a drug sale." *Commonwealth* v. *Kennedy*, 426 Mass. at 708. Moreover, "the quickness of the interaction between [Simpson and the defendant] reasonably could be interpreted by the officer as suspicious conduct, similar to the suspicious conduct of the 'furtive' transaction observed in [*Commonwealth* v. *Santaliz*, 413 Mass. 238, 241 (1992)]." *Commonwealth* v. *Kennedy*, *supra* at 708-709. We are mindful that in *Kennedy* the seller had been arrested previously for narcotics sales and was the subject of complaints from people in the neighborhood, *id.* at 704; that in *Santaliz*, there was an obvious exchange of an object and money, *supra* at 240; and that in both *Kennedy* and *Santaliz* the officers had had considerable experience with drug transactions in the same location. However, in each of those cases the facts were deemed sufficient to establish probable cause for arrest. If the facts set out in *Kennedy* and *Santaliz* were sufficient to support a finding of probable cause, the facts established here were sufficient to establish reasonable suspicion.

Once stopped, the ten dollar bill in the defendant's hand and her spontaneous statement that she had obtained the money from a "friend" in the McDonald's parking lot were sufficient additional facts to establish probable cause. The Camry appears to have left the parking lot before Cardona and Craven approached the Bronco and discovered the cocaine in Simpson's

right hand, the same hand he had extended into the Camry and withdrew in a closed position. The events the police officers described appear to have happened in a short period of time. The distance between Egleston Square and the place where the defendant was stopped was not much more than half a mile. See *Crowe* v. *Ward*, 363 Mass. 85, 87 (1973) (court may take judicial notice of distances). The officers were entitled to infer that there was a "planned rendezvous," *Commonwealth* v. *Soto*, 45 Mass. App. Ct. 109, 111 (1998), followed by a transaction between Simpson and the defendant in which Simpson obtained from the defendant's car the plastic bag containing a white powder he was holding in his hand and in exchange Simpson gave the defendant the ten dollar bill she was holding in her hand at the time of the stop. "[R]easonable inferences and common knowledge are appropriate considerations for determining probable cause." *Commonwealth* v. *Welch*, 420 Mass. 646, 650 (1995) (citation omitted). "An inference . . . need only be reasonable and possible; it need not be necessary or inescapable." *Commonwealth* v. *Beckett*, 373 Mass. 329, 341 (1977). The officers' observations in the parking lot, together with the evidence revealed at the stop, constituted "facts and circumstances . . . to warrant a prudent person in believing that [the defendant] ha[d] committed . . . an offense." *Commonwealth* v. *Kennedy*, 426 Mass. at 708, quoting from *Commonwealth* v. *Santaliz*, 413 Mass. at 241. We therefore conclude that the motion judge misapplied constitutional principles to the facts she found.

Within a week of the filing of the Commonwealth's brief in this court, the defendant filed a motion to dismiss the appeal on the ground that "the Commonwealth . . . failed to order a tape or transcript of the proceedings . . . [and] that in its brief the Commonwealth makes reference only to its appendix which contains the findings of the judge below." She asserts that "[t]his is not sufficient for this Court to review the case." A single justice of this court denied the motion and referred the motion to the panel hearing the case. In its brief on appeal, the defendant argues that, without a transcript, there is no basis for us to evaluate the correctness of the judge's findings. She acknowledges, however, that "[t]he facts set forth in the Commonwealth's brief track the findings of the district court judge . . . [and that she] therefore, accepts the Commonwealth's statement of facts." As the single justice wrote, "it does not

automatically follow that the correctness of the Judge's order cannot be reviewed without a transcript." Rule 8(b)(2), as amended, 397 Mass. 1230 (1986), of the Massachusetts Rules of Appellate Procedure provides that the parties may designate the parts of the proceedings which need not be transcribed. Indeed, "[t]he parties are encouraged to stipulate to those parts of the proceedings which are unnecessary to the appeal." *Ibid.* Here, since there is no dispute about the judge's findings of facts, no transcript is necessary to decide whether she properly applied the law to these facts. Strictly speaking, upon receipt of the judge's findings, the Commonwealth ought to have obtained the stipulation for which rule 8(b)(2) provides, rather than responding to the defendant's motion in this court by offering "to have any portion of [the cassette] tape transcribed if defendant/appellee so desires." Nevertheless, the Commonwealth, as the appellant in this case, has in fact satisfied its burden to provide an adequate record for appellate review. See *Commonwealth* v. *Woods*, 419 Mass. 366, 371 (1995). Compare *Robinson* v. *Planning Bd. of Wayland*, 23 Mass. App. Ct. 920, 921-922 (1986) (appellate court's discretion under Mass.R.A.P. 3[a], as amended, 378 Mass. 927 [1979]).

> *Order allowing motion to dismiss vacated.*

> *Remanded for further proceedings consistent with this opinion.*