Agnes, A.J.
The defendant Eddy Velasquez is charged by indictment with trafficking in cocaine, a Class B controlled substance, in excess of 14 grams, and the offense is alleged to have occurred within a school zone in violation of G.L.c. 94C, §32J. The defendant has filed a pretrial motion to suppress evidence seized from a motor vehicle which he was operating. Based on the credible evidence presented at the hearing on March 7, 2003,1 make the following findings of fact and rulings of law.
FINDINGS OF FACT
In February 1997, the City of Lynn Police Department maintained a drug task force which included approximately thirty officers. That month, the task force began a six-week project known as Operation Overdose which was an effort to reduce a growing number of drug overdoses in the City of Lynn. The task force targeted certain pay telephones in the city for surveillance because officers believed they were locations from which arrangements were made for drug sales elsewhere in the city. The task force strategy was for undercover officers to stake out these pay telephones and follow the vehicles in which occupants had stopped to make use of those pay telephones until grounds for a motor vehicle stop or threshold inquiry developed, or until the officers were satisfied that no criminal activity was occurring. The only discrimination employed by the police in terms of who was targeted for surveillance was that the officers tended to focus on callers who made what appeared to be very brief calls, and excluded vehicles with which they were previously familiar and did not believe were involved in criminal activity. Prior to February 15, Operation Overdose was netting about 15-20 arrests per day throughout the cily. Before this case, officer McHale had been involved in five arrests as a member of Operation Overdose. The pay telephones described below at Sonny’s Car Wash, at the laudromat, and at Beef World were all locations from which it had been established by prior arrests that persons had made use of the pay telephones to arrange for drug purchases.
On February 15, 1997, at approximately 1:00 p.m., Lynn Police Officer Mark McHale was on duly and working in an undercover capacity for the task force. A surveillance team was stationed to observe activity at a pay telephone located at Sonny’s Car Wash on the Lynnway, a major thoroughfare that brings travelers into the City of Lynn from Boston, Everett, Chelsea, and Revere. Officer McHale received a radio transmission from Sergeant Reddy indicating that members of the surveillance team were following a white motor vehicle which had stopped briefly at Sonny’s pay telephone. The operator had exited the white vehicle at Sonny’s and made a brief telephone call.
Officer McHale, who was patrolling in an undercover cruiser at the time, observed the white vehicle near the North Shore Community College and began to follow it. The white vehicle proceeded on Broad Street, and made a left turn onto Green Street. The vehicle then proceeded to Union Street and parked next to or behind a silver colored vehicle. A short conversation took place between occupants of the two vehicles, but no exchange of drugs or currency was observed. The silver vehicle left the area as did the white vehicle. Officer McHale continued to follow the white vehicle. It came to a stop in front of the laundromat on the comer of Lewis Street. The operator exited the vehicle, went to the pay phone inside the laudromat, appeared to make a brief telephone call, and then, without using the facility, exited the laudromat and entered the white vehicle.
At this point, officer McHale observed the white motor vehicle drive for about 10 minutes to another pay phone at Green and Broad streets. The operator exited the vehicle and appeared to make a brief telephone call from a pay phone outside of a variety store. The operator returned to the white vehicle and drove to the comer of Broad and Newall streets, then pulled the vehicle over. The two occupants exited the vehicle, stood outside for a few minutes, and then entered Beef World, a sandwich shop. They appeared to use the pay telephone inside the store. They exited the store without buying anything. Officer McHale next observed the white vehicle travel back to the area of the laudromat and pull alongside a blue vehicle bearing Mass. Registration 921XRY. Following a brief conversation, both vehicles pulled away, and drove around the block. *747 Officer McHale saw the blue car pull over on Lewis Street, as did the white car. From his vantage point about 12 feet behind the white car, officer McHale observed the passenger seated in the white car reach his arm out and tiy to hand a quantity of United States currency to the passenger in the blue car. He did not, however, see an actual exchange between the occupants of the white and blue cars. At this point, the blue car sped away followed by the white car. In previous cases under Operation Overdose in which motor vehicle stops had been made and parties arrested, the police observed an actual exchange between occupants of two vehicles.
Officer McHale maintained his surveillance of the white car. A few minutes later, he received a radio transmission from officer (now Lieutenant) Thomas Reddy that the blue car had been stopped and that drugs were found. Officer Reddy followed the blue car and arranged for it to be stopped by a marked unit which activated its blue lights and pulled the blue car over a short distance away on Fayette street, across from Essex street. Officer Reddy was present at the time of the stop. As he exited his vehicle, he observed both the operator and the passenger of the blue car leaning forward. He approached the female seated in the passenger side of the blue car. He observed her trying to place what appeared to be sandwich baggies under the front seat. He also observed the male operator, who is the defendant, Eddy Velasquez, trying to tuck a clear plastic bag containing a white powdery substance, believed to be cocaine, under the front seat. The female passenger was ordered out of the vehicle and four plastic twists containing a substance believed to be cocaine were observed inside the sandwich bag she was trying to hide. The defendant and female passenger were both arrested and transported to the police station.
Throughout the course of the surveillance conducted by officer McHale and officer Reddy, no motor vehicle violations were observed.
DISCUSSION
The Commonwealth bears the burden of proving that the motor vehicle stop was justified on the basis either of probable cause or reasonable suspicion. See Commonwealth v. Antobenedetto, 366 Mass. 51, 57 (1974). When the police stop a motor vehicle or detain an individual on grounds that they suspect the person or persons of involvement in criminal activity, the determination of whether the action was justified is based on an objective assessment of the facts. Commonwealth v. Santana, 420 Mass. 205, 208-10 (1995). The police need not be certain whether they are acting on the basis of probable cause or reasonable suspicion, so long as their conduct comports with constitutional requirements. Here, the defendant maintains that the police had neither probable cause nor reasonable suspicion because they did not observe a completed transaction that was consistent with the sale of drugs.
When the uniformed officers in this case activated their blue lights and pulled the blue vehicle over which was operated by the defendant, they transformed a surveillance, which requires no justification, into the stop of a motor vehicle and the detention of its occupants, which requires “some level of justification.” Commonwealth v. Smigliano, 427 Mass. 490, 492 (1998).
“[A] police officer may stop an individual and conduct a threshold inquiry if the officer reasonably suspects that such individual has committed, is committing, or is about to commit a crime. To qualify as reasonable, the officer’s suspicion must be based on specific, articulable facts and reasonable inferences drawn therefrom. The standard is objective: would the facts available to the officer at the moment of the seizure or the search warrant a [person] of reasonable caution in the belief that the action taken was appropriate?” Commonwealth v. Mercado, 422 Mass. 367, 369 (1996) (quotations and citations omitted). The police are entitled to apply their knowledge and experience as police officers to assess facts that might not be regarded as significant by lay people. See Commonwealth v. Silva, 366 Mass. 402, 407 (1966).
This case falls into that category of cases exemplified by Commonwealth v. Hill, 49 Mass.App.Ct. 58 (2000), rev. denied, 432 Mass. 1101 (2000), in which the experienced police officers made observations of individuals in automobiles engaged in activities that are indicative of transactions involving illegal drugs. In Hill, the court noted that the police were aware of the following facts. The police observed a man operating a Ford Bronco with a female passenger drive up to an MBTA station and exit the vehicle to make a telephone call. The operator was then observed driving to a near by McDonalds restaurant and parking the vehicle. A Camry automobile next arrived and parked next to the Ford Bronco. The operator of the Bronco exited his vehicle and went to the driver’s side of the Camry, where there was a brief conversation with the operator of the Camry. The operator of the Bronco then went around to the passenger side of the Camiy, opened the door, and leaned into it with his right arm extended. He then stood up, closed the passenger’s side door and moved away with his right hand closed. This man then reentered the Ford Bronco. Hill, supra 49 Mass.App.Ct. at 59-60.
At this point, the police officers approached the Bronco and saw a plastic bag containing a white substance in the operator’s right hand. This person was then arrested. The police officers communicated this development to other officers following the Camry, which by this time had left the area. The police stopped the Camry. The operator stated, “I can’t believe this; I’m a Boston cop.” The operator stated she had just met a friend who owed her ten dollars and she had a *748 ten dollar bill in her hand; she was arrested and her car was searched. Based on these facts, findings that all officers involved were experienced narcotics’ investigators and a finding that the area in question was a high crime area where many drug arrests had occurred, the Appeals Court reversed the trial judge on grounds that reasonable suspicion for a threshold inquiry was present. It noted that “(i]f the facts set out in Kennedy [Commonwealth v. Kennedy, 426 Mass. 703 (1998)] and Santaliz [Commonwealth v. Santiliz, 413 Mass. 238 (1992)] were sufficient to support a finding of probable cause, the facts established here were sufficient to establish reasonable suspicion.” Hill, supra, 49 Mass.App.Ct. at 63.
The police officers in the case at bar were experienced investigators who were assigned to a unit specializing in drug investigations. Prior to this case, they had documented that persons were using a number of pay telephones in the City of Lynn to arrange for drug purchases. Characteristic of these transactions was that someone was observed making a very brief stop at a pay telephone, appearing to make some kind of quick call from the pay phone, and then driving to another location in the city where the occupants of the caller/buyer’s vehicle conducted a brief meeting with the occupants of the seller’s vehicle, and a quick exchange of drugs for money occurred. “In a similar context, the Supreme Judicial Court has remarked that the quickness of the interaction between the parties reasonably could be interpreted by the officer as suspicious conduct, similar to the suspicious conduct of the ‘furtive’ transactions observed in Commonwealth v. Santaliz, 413 Mass. 238, 241 (1992).” Hill, supra, 49 Mass.App.Ct. at 63, citing Commonwealth v. Kennedy, supra at 708-09.
Although the officers in this case did not observe a completed hand-off of drugs for money, they did observe an unusual and, based on their training and experience, suspicious event when an occupant of the white vehicle reached out his arm and offered money to an occupant of the blue vehicle. This observation along with evidence of frequent, brief stops made by the white vehicle, the series of what appeared to be very brief telephone calls from pay telephones at several different establishments, and the meetings between the occupants of the white and silver vehicles, were sufficient to establish reasonable suspicion that criminal activity was taking place or about to take place.[1] See Commonwealth v. Santaliz, 413 Mass. at 242 (even if no one factor alone satisfies the required level of suspicion for the action taken by the police, the “whole ‘silent movie’ disclosed to the eyes of an experienced narcotics investigator” should be considered) (citations omitted). See also Commonwealth v. Ferrara, 376 Mass. 502, 504-05 (1978) (suspicious behavior involving an individual who entered and exited a dry cleaning establishment three different times while carrying nothing justified a stop of his motor vehicle).
As in Hill, the officers in this case were entitled to infer that there was a “planned rendezvous.” Id. at 64, quoting Commonwealth v. Soto, 45 Mass.App.Ct. 109, 111 (1998). This was followed by what appeared to be an attempted purchase of illegal drugs. Furthermore, as noted in the Hill case, “ ‘reasonable inferences and common knowledge are appropriate considerations for determining probable cause.’ Commonwealth v. Welch, 420 Mass. 646, 650 (1995) (citation omitted). ‘An inference . . . need only be reasonable and possible; it need not be necessary or inescapable. Commonwealth v. Beckett, 373 Mass. 329, 341 (1977).’ ” Hill, supra 49 Mass.App.Ct. at 64. The fact that a sale of drugs did not actually occur does not diminish the reasonableness of the inferences drawn by the police that “criminal activity was afoot.” See Terry v. Ohio, 392 U.S. 1, 27 (1968).
Once officer Reddy approached the blue motor vehicle, his plain view observations that the occupants were trying to hide illegal drugs provided him with justification to order them out of the vehicle. This, in turn, which in turn led to further observations of illegal drugs. As in Hill supra these additional facts established probable cause for the defendant’s arrest.
ORDER
For the above reasons, the defendant’s pretrial motion to suppress is DENIED.

It is important to note that a motor vehicle stop and threshold inquiry can be undertaken to prevent a crime from taking place, not merely to apprehend those suspected of having committed a crime. See United States v. Hensley, 469 U.S. 221 (1985), discussing Terry v. Ohio, 392 U.S. 1 (1968). See also Commonwealth v. Smigliano, 427 Mass. 490 (1998).