A Hampden County grand jury indicted the defendant for trafficking opium (oxycodone pills) in an amount more than one hundred grams but less than two hundred grams in violation of G. L. c. 94C, § 32E(c )(3), possession with intent to distribute clonazepam in violation of G. L. c. 94C, § 32B, a related school zone charge under G. L. c. 94C, § 32J, and negligent operation of an automobile, in violation of G. L. c. 90, § 24(2)(a ). After a hearing, a judge of the Superior Court allowed the defendant's motion to suppress drugs, a drug ledger, and packaging material seized by the police during a warrantless search of the defendant's automobile and his person. The judge also suppressed drugs and money contained in a package which the defendant threw from his van as he was speeding away from the police. The Commonwealth was granted leave by a single justice of the Supreme Judicial Court to pursue an interlocutory appeal and the matter was reported to this court. See Mass.R.Crim.P. 15(a)(2), as appearing in 422 Mass. 1501 (1996). For the reasons that follow, we reverse.
Background. We summarize the relevant facts found by the judge, which we supplement with uncontested testimony from the suppression hearing. See Commonwealth v. Jones-Pannell, 472 Mass. 429, 431 (2015).
During the evening of February 6, 2015, Detective Edward Kalish, an experienced narcotics investigator, was conducting surveillance on a building located on Algonquin Place in the city of Springfield with Lieutenant Aiello, who also had significant experience investigating narcotics offenses.[2] ,[3] Detective Kalish described the area as a "high crime" neighborhood, and stated that he had made a number of arrests in the vicinity. While they were seated in their unmarked cruiser, Kalish and Aiello observed a sport utility vehicle (SUV) enter Algonquin Place and park approximately 250 feet away from them. Soon thereafter, a red van, operated by an individual later identified as the defendant, entered Algonquin Place from the opposite direction and stopped in the middle of the street next to the SUV. Neither Kalish nor Aiello recognized the van and they did not know the defendant. They observed the defendant leave his vehicle and approach the driver of the SUV. Through the use of binoculars, Kalish saw the defendant reach into the SUV with his right arm and retrieve what appeared to be paper currency. The defendant then returned to his van for one to two minutes before approaching the SUV again. The defendant's left hand was cupped, as if he was holding an object, and he reached quickly into the SUV. When he withdrew his hand, Kalish saw that it was empty. The defendant returned to his van and drove away.
Although Kalish could not identify the object in the defendant's hand, he believed that he had witnessed a hand-to-hand drug transaction and reported his observations to other officers who proceeded to stop the defendant's van. As the officers approached the van, the defendant drove away and a high-speed chase ensued. During the pursuit, the defendant threw a package containing a large amount of currency and oxycodone pills out of the van. Eventually, the defendant drove to the neighboring city of Chicopee, where the police arrested him. Additional oxycodone pills were seized from the defendant's person, and a drug ledger and packaging materials were found in the center console of the van.
On the basis of these facts, the judge concluded that the police had acted on a hunch, and not reasonable suspicion, when they decided to stop the defendant's van. In reaching his conclusion, the judge reasoned that "the credible evidence established nothing more than two individuals meeting in the street and a tender of cash for an unknown object." The judge noted that the defendant was not known to the police, he was not the target of the surveillance activity that evening, and the officers themselves did not rely "on any particular level of crime in the area" as a contributing factor to their suspicion that a drug transaction had occurred. The judge then determined that, because the initial stop was unlawful, the subsequent arrest was unlawful and the "seizure of contraband constituted 'fruit of the poisonous tree.' "[4]
Discussion. When we review an order on a motion to suppress evidence, we accept the motion judge's subsidiary findings of fact absent clear error and review independently his ultimate findings and conclusions of law. Commonwealth v. Jimenez, 438 Mass. 213, 218 (2002). The question we address in this case is whether the police had a legally sufficient basis for stopping the defendant's van following the events witnessed by Detective Kalish and Lieutenant Aiello. We conclude that they did.
A police officer may stop a vehicle in order to conduct a threshold inquiry if he has reasonable suspicion that the occupant has committed, is committing, or is about to commit a crime. See Commonwealth v. Watson, 430 Mass. 725, 729 (2000). To qualify as reasonable, the officer's suspicion must be based on "specific, articulable facts and reasonable inferences drawn therefrom." Commonwealth v. DePeiza, 449 Mass. 367, 371 (2007) (quotation omitted). Here, those facts included the observation, by two officers experienced in narcotics investigations, of an unusual sequence of events: the defendant stopped in the middle of a city street at 9:00 p.m. and engaged in a hand-to-hand transaction involving the exchange of paper currency for an object small enough to be hidden within the defendant's hand. See Commonwealth v. Freeman, 87 Mass. App. Ct. 448, 452 n.4 (2015). This event was sufficient to permit the officers to suspect that a street-level drug sale had occurred. See Commonwealth v. Santaliz, 413 Mass. 238, 241 (1992) ; Commonwealth v. Kennedy, 426 Mass. 703, 710-711 (1998).[4] The defendant's movements provided ample support for the inference that an object had been exchanged, Commonwealth v. Stewart, 469 Mass. 257, 263 (2014), and "the quickness of the interaction between [the defendant and the driver of the SUV] reasonably could be interpreted by the officer[s] as suspicious conduct." Kennedy, supra at 708-709. Furthermore, although the judge did not find that the neighborhood was known for the sale of drugs, he did find that Kalish had made many arrests in the area, and the uncontroverted testimony established that the officers were conducting surveillance in connection with a narcotics investigation. While it is true, as the judge noted, that the officers did not have any specific information that the defendant was engaged in selling drugs in the location, that fact alone does not negate the inference that a drug transaction had occurred. See Commonwealth v. Freeman, supra at 450, 452 (experienced officer's observation of hand-to-hand transaction involving exchange of money for object that was "small enough to fit in the palm of a hand," together with anonymous reports of increased drug activity, was "sufficient to contribute to the circumstantial evidence that a drug transaction had occurred"). Here, both officers "regard[ed] the event as consistent with a street-level drug transaction," Commonwealth v. Sanders, 90 Mass. App. Ct. 660, 661 n.1 (2016), and, "[w]hile this activity may have been consistent with innocent activity, the conclusion drawn by the officers was substantially more than a hunch." Commonwealth v. Sweezey, 50 Mass. App. Ct. 48, 52 (2000).
Because the facts known to the police established a reasonable basis for stopping the defendant, we need not go further. Clearly, the defendant's subsequent flight, the high-speed chase, and the throwing of a package containing drugs and money from the van elevated the officers' reasonable suspicion to probable cause to arrest the defendant. Id. at 52 n.10.
Order allowing motion to suppress reversed.

Regarding Detective Kalish, the judge found that he (1) had twenty years of experience as a Springfield police officer; (2) "has made thousands of narcotics arrests"; and (3) "has significant experience and training in the investigation and arrest of narcotics offenses." As to Lieutenant Aiello, who was the night lieutenant in charge of the narcotics unit on the night in question, the judge found that he likewise has "significant experience in the investigation and arrest of narcotics-related offenses."

Kalish testified, although the judge did not specifically find, that it was a "[n]arcotics investigation."

Although the judge did not specifically include the drugs and money found in the package thrown by the defendant from the van in his suppression order, it is clear from his reasoning that he concluded these items also were fruits of the poisonous tree and, as such, should be suppressed.