NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1188

COMMONWEALTH

vs.

ANTHONY ARRUDA.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The Commonwealth appeals from a District Court judge's order allowing the defendant's motion to suppress suspected fentanyl recovered from his person. The judge allowed the motion on the ground that the detectives lacked reasonable suspicion to justify the seizure of the defendant. We affirm.

Background. We summarize the facts as found by the judge, supplemented with undisputed evidence from the record that does not contradict the judge's rulings. See Commonwealth v. Robinson-Van Rader, 492 Mass. 1, 4 (2023).

At approximately 12:30 P.M. on October 8, 2020, detectives Paul McGuire and Guy Furtado[1] were on patrol in Fall River.

_____

[1] Detectives McGuire and Furtado were members of the Fall River police department's vice and intelligence unit, which investigates narcotic, prostitution, and gambling offenses in the area.

McGuire spotted Timothy Eddy, a man known to him, walking at a fast pace while on his cell phone.  McGuire recognized Eddy as someone "drug involved" from whom he had seized narcotics in the past.  McGuire also knew there was an active warrant for Eddy's arrest.  The detectives followed Eddy for a few blocks until he walked into the parking lot of a coffee shop.

As Eddy arrived, the detectives observed the defendant, who was unknown to them, approach from the other side of the parking lot.  The defendant and Eddy greeted each other with a "fist bump" and entered the coffee shop.  They were inside for about three minutes before leaving with coffee cups and a small bag, which seemed to contain a donut.  Eddy put the bag and his coffee cup on the ground, and the defendant gave Eddy an "indiscernible object."  Eddy then put his hand in his pocket while the defendant kept his hands by his side.  Neither Eddy nor the defendant made any move to leave.

At this point the detectives approached Eddy and the defendant and ordered them not to move and to show their hands. The detectives read them their Miranda rights and asked if they had any illegal narcotics.  Eddy admitted to having some bags on him, and Furtado recovered four bags of suspected fentanyl from his pocket.  The defendant also admitted to having bags on him, which he stated contained heroin and which McGuire suspected was fentanyl.  The detectives seized several bags from his person.

2

The detectives later learned that the defendant lived in the building next to the coffee shop.

Discussion. "In reviewing a decision on a motion to suppress, we accept the judge's subsidiary findings absent clear error but conduct an independent review of [the] ultimate findings and conclusions of law" (quotations omitted). Commonwealth v. Jones-Pannell, 472 Mass. 429, 431 (2015).

The judge found that the detectives seized the defendant when they ordered him not to move and to show his hands after he left the coffee shop. The Commonwealth concedes that the defendant was seized at that time. We agree, as the detectives "objectively communicated that [they] would use [their] police power to coerce [the defendant] to stay." Commonwealth v. Matta, 483 Mass. 357, 362 (2019).

The question is then whether, at the time of the seizure, there was reasonable suspicion that the defendant "was committing, had committed, or was about to commit a crime." Commonwealth v. Chin-Clarke, 97 Mass. App. Ct. 604, 608 (2020), quoting Matta, 483 Mass. at 365. Reasonable suspicion must be based on "specific, articulable facts and reasonable inferences [drawn] therefrom" (citation omitted). Commonwealth v. DePeiza, 449 Mass. 367, 371 (2007). In determining whether reasonable suspicion exists, we consider "the whole 'silent movie' disclosed to the eyes of an experienced narcotics investigator."

3

Commonwealth v. Santaliz, 413 Mass. 238, 241 (1992). A mere hunch or good faith on the part of the police does not pass constitutional muster. See Commonwealth v. Clark, 65 Mass. App. Ct. 39, 44 (2005).

At the time the detectives seized the defendant, all they knew about him was that he met Eddy, a "drug involved" person with an outstanding arrest warrant, at a coffee shop, purchased coffee, and gave him an indiscernible item outside the shop. These facts were inadequate to support a reasonable suspicion that the exchange was a narcotics transaction. While the detectives recognized Eddy, the defendant was unknown to them. The defendant and Eddy clearly knew each other, as evidenced by the "fist bump" greeting they exchanged outside the shop. Consistent with two people meeting for coffee, the men left the shop a few minutes later with coffee cups and a donut. And after the defendant gave Eddy the unknown object, neither made any move to leave. These benign observations did not give rise to reasonable suspicion of an illegal narcotics sale. Without more evidence "to color the transaction" they had witnessed, the detectives lacked sufficient justification to seize the defendant. Commonwealth v. Ellis, 12 Mass. App. Ct. 476, 477 (1981) (no reasonable suspicion where officer observed people talking through car window and defendant exchanged unknown object for what appeared to be money).

4

We are unpersuaded by the Commonwealth's assertion that this case is analogous to the "silent movie" cases where reasonable suspicion was found to exist. There were neither reports of increased drug activity at the coffee shop nor any evidence credited by the judge showing that the shop was in a high drug area. Cf. Commonwealth v. Kennedy, 426 Mass. 703, 708 (1998); Commonwealth v. Freeman, 87 Mass. App. Ct. 448, 451-452 (2015). The exchange was not of an unusual nature that would typically illicit suspicion. Cf. Kennedy, supra at 708-709; Santaliz, 413 Mass. at 241. Neither man moved to leave after the exchange or was otherwise found by the judge to have moved in a suspicious manner. Cf. Commonwealth v. Stewart, 469 Mass. 257, 261 (2014).

Unlike those cases, the detectives here, acting only on a hunch after observing a fairly ordinary encounter, immediately leapt to the conclusion that they had observed a drug sale and seized the defendant. The defendant's "observed movements were just as consistent with any number of innocent activities" as they were with a narcotics transaction and, without more, did not arise to reasonable suspicion. Commonwealth v. Barreto, 483 Mass. 716, 721 (2019). We therefore conclude that the seizure

of the defendant was unlawful and that the evidence obtained therefrom was correctly suppressed.

<u>Order allowing motion to suppress affirmed</u>.

By the Court (Wolohojian, Shin & Ditkoff, JJ.[2]),

*Joseph F. Stanton*

Clerk

Entered: October 10, 2023.

---

[2] The panelists are listed in order of seniority.