NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

23-P-358                                      Appeals Court

COMMONWEALTH  vs.  KEVER CASTILLO-MARTINEZ.

No. 23-P-358.

Essex.      November 2, 2023. – April 2, 2024.

Present:  Sacks, Brennan, & D'Angelo, JJ.

Controlled Substances.  Practice, Criminal, Motion to suppress, Interlocutory appeal.  Search and Seizure, Reasonable suspicion.  Constitutional Law, Reasonable suspicion.

Complaint received and sworn to in the Salem Division of the District Court Department on June 3, 2021.

A pretrial motion to suppress evidence was heard by Sarah M. Joss, J.

An application for leave to prosecute an interlocutory appeal was allowed by Elspeth B. Cypher, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by her to the Appeals Court.

Kathryn Leary Janssen, Assistant District Attorney, for the Commonwealth.
Mark W. Barry for the defendant.

BRENNAN, J.  After seeing what he believed was an illegal drug transaction, a Danvers police detective stopped the

defendant. During the brief exchange that followed, the defendant surrendered a bag containing fifty vials of tetrahydrocannabinol (THC) and acknowledged "[doing] something wrong" to make extra money. The defendant moved to suppress the THC vials and his statements on the ground that police did not have reasonable suspicion to stop him. After an evidentiary hearing, a District Court judge determined that police did not have reasonable suspicion that what the detective witnessed was a drug transaction and suppressed the evidence. The Commonwealth sought leave to pursue an interlocutory appeal from the judge's orders. A single justice of the Supreme Judicial Court granted leave for an appeal to this court. See G. L. c. 278, § 28E; Mass. R. Crim. P. 15 (a) (2), as amended, 476 Mass. 1501 (2017). Concluding that the detective had a reasonable and articulable suspicion that the defendant was involved in a drug transaction prior to stopping the defendant, we reverse. See Commonwealth v. Edwards, 476 Mass. 341, 350 (2017).

Background. We summarize the facts as found by the motion judge, supplemented with uncontroverted testimony of the witness that was implicitly credited by the judge. See Commonwealth v. Matta, 483 Mass. 357, 358 (2019); Commonwealth v. Oliveira, 474 Mass. 10, 11 (2016).

On May 3, 2021, at approximately 2:45 P.M., a Danvers police detective, in plain clothes and an unmarked car, began surveillance of the Liberty Tree Mall parking lot.  Over his twenty-three years as a police officer, the detective had witnessed hundreds of illegal drug transactions in the lot.  He had extensive training and experience in narcotics cases, including eight years on a Drug Enforcement Agency taskforce, and had participated in hundreds of investigations relating to drug activity.  In addition to the hundreds of drug transactions he had observed, the detective had seen numerous "legitimate" exchanges in that parking lot.  In the legitimate exchanges, including Craigslist or eBay purchases, the detective generally saw people get out of their vehicles, greet one another, and exchange items.  On fewer than five occasions, the detective stopped people who exchanged items in the parking lot only to determine that the transactions were legitimate.

While surveilling the parking lot, the detective saw a black Mercedes pull into a parking space.  Using binoculars, he observed the driver looking at his lap, looking around, and moving his arms.  By cross-referencing the vehicle's registration, the licensed drivers at the registered address in Gloucester, and the photographs on those drivers' licenses in the Registry of Motor Vehicles database, the detective was able to identify the driver as Theodore Combs.

The detective then called a Gloucester detective, whom he had known as a police officer for approximately twenty years. The Gloucester detective told him that Combs was known to sell THC products in the Gloucester area. During the ten-minute period that the detective watched the Mercedes, Combs did not exit the vehicle.

After a short time, a Subaru parked a couple of spaces away from the Mercedes. The defendant exited the Subaru and got into the passenger seat of the Mercedes. He had nothing in his hands when he exited the Subaru. The detective then saw the defendant and Combs with their heads down, moving their arms, and leaning in toward one another. After only a few minutes, the defendant exited the Mercedes holding a plastic bag.

Based on his training and experience in conjunction with the information he received about Combs from the Gloucester detective, the detective believed that the interaction between Combs and the defendant was a drug transaction. He called for a marked police cruiser to stop Combs's Mercedes. The detective then activated the lights on his vehicle and pulled alongside the defendant's Subaru. He approached the Subaru and explained to the defendant, who remained in the car, what he had observed. The defendant responded that he did something wrong and was trying to make some extra money. The defendant then handed the plastic bag to the detective. The bag contained five boxes,

each containing ten vials of liquid THC.  The defendant identified the person in the Mercedes as his friend "Theo" and showed the detective Theo's contact number on his cell phone.

Discussion.  "In reviewing a ruling on a motion to suppress evidence, we accept the judge's subsidiary findings of fact absent clear error" (citation omitted).  Commonwealth v. Daveiga, 489 Mass. 342, 346 (2022).  "We review independently the application of constitutional principles to the facts found" (citation omitted).  Id.  The Commonwealth does not dispute that the defendant was seized when the detective activated his cruiser lights to signal the Subaru to stop.  The challenge in this case is solely to the motion judge's conclusion that the stop lacked legal justification.

"Where a police officer has a reasonable, articulable suspicion that a person has committed, is committing, or is about to commit a crime, the officer may stop that person to conduct a threshold inquiry."  Commonwealth v. Bostock, 450 Mass. 616, 619 (2008), citing Terry v. Ohio, 392 U.S. 1, 21-22 (1968).  "That suspicion must be grounded in specific, articulable facts and reasonable inferences [drawn] therefrom rather than on a hunch" (quotations and citations omitted).  Commonwealth v. DePeiza, 449 Mass. 367, 371 (2007).  When the basis for reasonable suspicion is a perceived drug transaction, "[i]t is not necessary . . . that the police officer observe an

exchange of items or actually see drugs or cash, but it is necessary that the observations by the police occur in a factual context that points to criminal activity." Commonwealth v. Kearse, 97 Mass. App. Ct. 297, 302 (2020). See Commonwealth v. Stewart, 469 Mass. 257, 260-261 (2014).

"[I]n Commonwealth v. Santaliz, 413 Mass. 238, 241 (1992), the Supreme Judicial Court set forth a nonexclusive list of factors that, when taken together, support a ruling that there was probable cause to search a person in the context of a suspected street-level drug transaction" (citation omitted). Commonwealth v. Santa Maria, 97 Mass. App. Ct. 490, 494 (2020). Those factors are "(1) the observation of an unusual transaction; (2) furtive actions by the participants; (3) the event occurs in a location where the police know drug transactions are common; and (4) an experienced officer on the scene regards the event as consistent with a street-level drug transaction." Id., quoting Commonwealth v. Sanders, 90 Mass. App. Ct. 660, 661 n.1 (2016). Where, as here, the standard is reasonable suspicion for an investigative stop, the proof of wrongdoing required is "obviously less than is necessary for probable cause." Kansas v. Glover, 140 S. Ct. 1183, 1187 (2020), quoting Navarette v. California, 572 U.S. 393, 397 (2014).

All the Santaliz factors were present here.  The detective saw the defendant enter the Mercedes with nothing in his hands. After the defendant and Combs put their heads down, leaned toward each other, and moved their arms, the defendant got out of the vehicle carrying a bag.  Although the detective did not actually see an exchange, he reasonably concluded that the defendant received the bag from Combs.  See Stewart, 469 Mass. at 261 (police had reasonable suspicion where officer saw four people huddled together but did not see actual exchange).  Prior to that quick interaction, the detective saw Combs "park his vehicle, . . . move his arms around, and look around the area." He also noted that Combs sat in his car for approximately ten minutes without getting out before the defendant arrived.  Taken together, Combs's and the defendant's behavior reasonably could have been interpreted by the detective as furtive conduct designed to hide the nature of their transaction.  See Commonwealth v. Kennedy, 426 Mass. 703, 707 (1998); Santa Maria, 97 Mass. App. Ct. at 495.  The detective further observed the defendant and Combs in an area he personally knew to be the location of hundreds of illicit drug transactions.  See Kennedy, supra at 708; Santa Maria, supra.  Finally, the detective, who was an experienced officer, testified that he believed what he

had witnessed was a drug transaction.[1]  See Kennedy, supra; Santa Maria, supra at 494.

In addition, the detective knew that Combs had a reputation with the Gloucester police as a THC dealer.  See Kennedy, 426 Mass. at 709.  The motion judge discounted this as a factor because there was no evidence of "specific stops, seizures, arrests, or convictions."  However, this was not a case in which the information that Combs was a drug dealer came from an anonymous tipster or unnamed confidential informant, whose veracity must be established before the information can be considered.  Contrast Commonwealth v. Mejia, 411 Mass. 108, 110-114 (1991).  We are unaware of any precedent requiring such knowledge before an officer may use particularized information about a specific individual obtained from another police officer as a factor in developing a reasonable suspicion.  To the contrary, Kennedy, supra at 709-710, frequently has been cited for the proposition that "reputation in the community as a drug dealer [is] another factor that can contribute to probable

---

[1] We are not persuaded by the defendant's argument that the detective's observations of legitimate transactions in the parking lot materially detracts from the quantum of suspicion. As the detective described them, those exchanges had distinctly different characteristics, particularly in that they were conducted in the open.  Moreover, alternative explanations for activities observed by police do not "negate the proposition that the described activity is, in the opinion of experienced drug investigators, consistent with drug selling." Commonwealth v. O'Day, 440 Mass. 296, 302 n.6 (2003).

cause." Santa Maria, 97 Mass. App. Ct. at 495. See Sanders, 90 Mass. App. Ct. at 661 n.2. See also Commonwealth v. Long, 482 Mass. 804, 814 (2019), quoting Kennedy, supra at 709 ("We have often recognized that a police officer's knowledge of the reputation for . . . drug dealing of persons interacting with a defendant . . . is a factor to support probable cause to arrest the defendant"); Commonwealth v. Levy, 459 Mass. 1010, 1012 (2011) (same). We think it a commonsense proposition that an experienced police officer is not merely repeating local gossip or base rumor when passing specific information about a person's reputation for criminal behavior to another officer. The Danvers detective thus reasonably could have relied on the information from the Gloucester detective as a factor, albeit not as weighty as his own observations and experience, supporting his reasonable suspicion that the defendant and Combs had engaged in a drug transaction.

In sum, based on the evidence found by the judge at the motion hearing, we conclude that there were ample specific and articulable facts to support a reasonable suspicion that the defendant had participated in an illegal drug transaction prior to the detective stopping him.[2]

---

[2] The defendant has requested his costs and reasonable attorney's fees pursuant to Mass. R. Crim. P. 15 (d), as amended, 476 Mass. 1501 (2017), and has indicated that he anticipates additional fees above those reflected in counsel's

_Order allowing motion to_
_suppress reversed_.

---

accompanying affidavit.  Although he is entitled to reasonable attorney's fees and costs, we decline to order them piecemeal. "The application setting forth the specific amount of fees and costs and supporting documentation should be filed [in this court] within thirty days of the issuance of the rescript." Commonwealth v. Santos, 99 Mass. App. Ct. 360, 365 (2021).  "The Commonwealth shall be afforded thirty days to respond to the defendant's request, and the court will then enter an appropriate order."  Commonwealth v. Ennis, 441 Mass. 718, 721 n.3 (2004).