RONNIE GREEN *vs.* BLUE CROSS & BLUE SHIELD OF
MASSACHUSETTS, INC.

No. 97-P-590.

Middlesex. April 29, 1998. - July 29, 1999.

Present: ARMSTRONG, LENK, & BECK, JJ.

*Insurance,* Health and accident. *Practice, Civil,* Findings by judge. *Consumer Protection Act,* Insurance, Unfair or deceptive act.

Evidence at the trial of a civil action alleging a medical insurer's violations of G. L. c. 93A supported a finding that the insurer breached its duty of good faith and fair dealing with respect to a claim filed by the insured, and the matter was remanded for further proceedings on the issue of damages and attorney's fees. [447-449]

CIVIL ACTION commenced in the Newton Division of the District Court Department on January 11, 1994.

The case was heard by *Conrad J. Bletzer,* J.

*Stephen K. Ault* for the plaintiff.

*Joseph Halpern* for the defendant.

BECK, J. The plaintiff, Ronnie Green, suffered from a condition called apertognathia — a separation of the upper and lower jaws that makes biting and chewing difficult and painful. After several years of appointments with specialists to diagnose the problem and recommend appropriate treatment, Green had corrective surgery to realign her jaws in Fort Worth, Texas, in June, 1992. Her medical insurer, Blue Cross and Blue Shield of Massachusetts, Inc. (BCBS), paid less than one-third of the charges for the surgery, leaving her responsible for the balance. In response, Green brought an action in District Court against BCBS, for violations of G. L. c. 93A and G. L. c. 176D, breach of contract, and misrepresentation. After a five-day bench trial conducted between March 17 and July 26, 1995, the judge found for BCBS. The Appellate Division affirmed the judgment and dismissed the appeal. On appeal to this court, the plaintiff

argues that certain of the judge's findings were clearly errone-
ous, that the judge misapplied the law to the facts, and that the
trial judge erred in striking her requests for rulings of law.

1. *Factual background.* a. *Plaintiff's insurance policy.* The
plaintiff is a long-term individual subscriber to a BCBS man-
aged major medical indemnity health insurance plan. Under the
terms of her policy, insofar as relevant here, BCBS pays for
services it determines to be medically necessary and within the
scope of benefits set out in the subscriber certificate. BCBS
determines medical necessity based on a review of the medical
records describing the subscriber's condition and treatment. It
pays eighty per cent of the usual and customary charge set
under the contract. Out-of-State services are reimbursed at Mas-
sachusetts rates, but out-of-State providers may charge subscrib-
ers for the difference between the provider's charge and the
BCBS payment, a practice called balance billing. Generally,
neither dental care nor cosmetic surgery is covered.

b. *Plaintiff's surgical procedure.* The plaintiff's surgery
involved cutting the jaw bone in two places (a LeFort osteotomy
and a horizontal osteotomy), pushing it into a new position, and
fashioning a dental implant (an osseointegrated implant).
Months before the date scheduled for her surgery, the plaintiff
made numerous telephone calls to BCBS to find out whether
BCBS would cover the surgical procedures proposed to correct
her problem. In connection with these efforts, Dr. Bruce Epker,
the Texas surgeon who was to perform the surgery, twice
submitted to BCBS a letter dated March 2, 1992, setting out the
procedures he intended to perform, the medical necessity for the
procedures, the code numbers for the procedures, and the
estimated charge for each. On April 6, 1992, BCBS gave the
plaintiff authorization for the hospitalization associated with the
surgery. Later that month, still having heard nothing about
coverage for the surgery itself, Green filed a complaint with the
State's Division of Insurance seeking information about her
coverage.

After consulting various officials at BCBS, the investigator
for the Division of Insurance wrote the plaintiff a short
handwritten memorandum. The memorandum said that BCBS
would pay for the LeFort osteotomy based on medical neces-
sity, and that the horizontal osteotomy "could be considered
'cosmetic' so will require surgeons' statements to the contrary
which would be reviewed by the Review Board." The memo

also informed Green that because she was having the surgery performed out-of-State, she would be responsible for any difference between the Texas charges and Massachusetts "reasonable and customary charges."

Green had the surgery performed in Texas as planned. Dr. Epker's charges for the surgery were consistent with his letter, except that an additional procedure, a bone graft augmentation, was performed, for which the charge was $1,500. Several months after the surgery, after continued inquiries from Green and apparently another call to the Division of Insurance, BCBS paid eighty per cent of the BCBS "Massachusetts allowed amount" for three of the procedures: $1,246.45 of the $4,500 for the LeFort osteotomy; $1,152.95 of the $2,700 for the implant and the horizontal osteotomy; and $536.80 of $1,305 for the anesthesia.

c. *The judge's findings.* Two months after the conclusion of the trial, the judge issued five pages of "findings." On appeal, the plaintiff claims the following findings are clearly erroneous: (1) "Plaintiff made no inquiry into the area of pricing of procedures"; (2) "Plaintiff contended from the start that she desired 'individual consideration' "; (3) "The Blue Cross computer pricing system could not give [the plaintiff] boiler-plate prices because she herself requested individual consideration"; (4) "The Department [*sic*] of Insurance . . . informed Green that out-of-state service providers would be reimbursed at the Massachusetts 'usual and customary' rate"; and (5) "[P]laintiff had been informed . . . that this procedure was not generally covered."

As to the plaintiff's legal responsibilities, the judge found that she had "a duty . . . to make inquiries in good faith on coverage as well as pricing"; "a duty to obtain the insurer's approval and extent of coverage to a closer degree of certainty than she relied upon"; and in view of her choice to go out of State for a medical procedure of a dental nature, "an added duty to firm up the scope of benefit coverage as well as individual consideration reimbursement." He concluded that BCBS did not violate G. L. c. 93A "because there was no actual breach of contract or misrepresentation."

2. *Discussion.* We address first the judge's finding that the plaintiff never asked about the "pricing of procedures." There is no dispute that Green made numerous telephone calls to BCBS and talked to various BCBS employees, inquiring

whether the proposed surgery would be "covered." In addition, her doctor notified BCBS of his proposed charges and requested a reply, which he never received. Although the testimony of Marilyn Rouse, the information consultant in the nongroup customer service department of BCBS, that the plaintiff never asked about pricing, if taken literally, may be sufficient to support the judge's finding, we are convinced that this finding is clearly erroneous, because it does not make sense.

In reviewing a matter in which the trial judge acts as fact finder, we "accept the judge's findings of fact as true unless they are clearly erroneous." *Kendall* v. *Selvaggio*, 413 Mass. 619, 620 (1992). A finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Springgate* v. *School Comm. of Mattapoisett*, 11 Mass. App. Ct. 304, 309-310 (1981), quoting from *United States* v. *United States Gypsum Co.*, 333 U.S. 364, 395 (1948). Although an insured is interested first in whether a procedure is covered at all, the mere fact of coverage, without information about the likely extent of coverage, is of little utility. It is the amount of coverage that a patient would regard as critical. It is apparent from the record that Green was not looking for an advance promise that the procedure was covered as a medical necessity; she was confident the records would support such a finding. Since she knew she would be responsible for balance billing, she wanted to know what BCBS would pay, so that she could determine what her share was likely to be. When an insured makes repeated inquiries as to whether an admittedly unusual procedure is covered, has her physician submit his proposed charges, and files a complaint with the Division of Insurance when her insurer fails to answer her questions, a finding that she has not sought pricing information is inconsistent with the evidence.

But even if the finding that Green did not ask about price is not clearly erroneous, the judge's determination of the relative duties of the parties was inconsistent with well-established legal principles. "We scrutinize without deference the legal standard which the judge applied to the facts." *Kendall* v. *Selvaggio*, 413 Mass. at 621.

The plaintiff claims that the judge "misunderstood and misapplied" G. L. c. 93A and c. 176D to the facts of her case. She argues that BCBS knew Dr. Epker's charge for the LeFort os-

teotomy was $4,500 because Dr. Epker so informed them; that BCBS also knew its usual allowance for that procedure was $1,558.06, the amount they in fact contributed toward her surgery; and that therefore their failure to disclose the usual allowance constituted misrepresentation. Although her argument is not a model of appellate advocacy, she sufficiently raised and argued the issue of whether BCBS had a duty under G. L. c. 93A to disclose the information she was obviously seeking to warrant our review of the issue.

While the insured has a responsibility to be informed about the terms of her policy and to make reasonable inquiry as to those terms, her attempts to obtain the information about her medical benefits should not require the utterance of a secret word (i.e., price), if the nature of the inquiry is reasonably clear. It has long been established, even before the passage of chapters 93A and 176D, that an insurer has an obligation to act in good faith, to "exercise common prudence to discover the facts as to liability and damages upon which an intelligent decision may be based." *Murach* v. *Massachusetts Bonding & Ins. Co.*, 339 Mass. 184, 187 (1959) (duty of insurance company in the exercise of its discretion regarding settlement). "The insurer will not be held to prophesy, but it will not be excused for indifference." *Ibid.* (citations omitted). The Consumer Protection Act, G. L. c. 93A, which applies to the insurance industry even in the areas in which it overlaps with c. 176D, *Dodd* v. *Commercial Union Ins. Co.*, 373 Mass. 72, 75-78 (1977), was a legislative attempt "to regulate business activities with the view to providing proper disclosure of information and a more equitable balance in the relationship of consumers to persons conducting business activities." *Commonwealth* v. *DeCotis*, 366 Mass. 234, 238 (1974). Chapter 93A "is a statute of broad impact which create[d] new substantive rights." *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. 688, 693 (1974).

There is no binding definition of what constitutes an unfair practice under c. 93A. *Commonwealth* v. *DeCotis*, 366 Mass. at 241. "The existence of unfair acts and practices must be determined from the circumstances of each case." *Id.* at 242. Part of the duty of enforcing consumer protection legislation "is to discover and make explicit those unexpressed standards of fair dealing which the conscience of the community may progressively develop." *Ibid.*, quoting from *Federal Trade Commn.* v. *Standard Educ. Soc.*, 86 F.2d 692, 696 (2d Cir.

1936), rev'd in part, 302 U.S. 112 (1937). In the circumstances of this case, placing on Green the entire burden of obtaining information that BCBS said it could not and would not provide, puts the policy holder in an untenable position and is inconsistent with the policy behind c. 93A. An obligation to deal with the insured with "candor and fairness" is inherent in any contract of insurance. *Sarnafil, Inc.* v. *Peerless Ins. Co.*, 34 Mass. App. Ct. 248, 254 (1993), quoting from *Trempe* v. *Aetna Cas. & Sur. Co.*, 20 Mass. App. Ct. 448, 455 (1985). We consider particularly odd the judge's suggestion that Green's inquiry into pricing should have included "follow[ing] up with the [Division] of Insurance or Dr. Epker [on] exactly how much of the charges she would be responsible for or the state to state difference in pricing." We also reject BCBS's argument that the patient should have asked the Massachusetts surgeon she consulted, who did not perform the surgery, what her share of the charges would be.

First of all, neither the Division of Insurance nor the doctor was a party to the certificate of insurance the plaintiff had with BCBS. There is no basis in the evidence for the suggestion that either of them could have answered her questions. Indeed, she did seek help from each of them, as evidenced by Dr. Epker's letter and the Division of Insurance memo, and was still lacking the information it later turned out that she needed. Second, it was not the State-to-State difference that was significant in this case; it was the usual and customary Massachusetts charge that Green needed and that BCBS did not provide. While we are mindful of the testimony that there was no price for Green's procedure "on the [BCBS] system" and of BCBS's apparent concern that giving exact prices could appear to be a promise to pay that amount, the insurer at least could have responded to Green's inquiries with the warning that coverage in similar cases was substantially less than the amount set out in Dr. Epker's letter. The testimony and the documentary evidence demonstrate that BCBS was able to compute their payment share easily enough when called upon to do so. Finally, the judge's finding that there was no violation of G. L. c. 93A because "there was no actual breach of contract or misrepresentation" is incorrect as matter of law. "[T]he statutory words 'unfair and deceptive practices' . . . are not limited by traditional tort and contract law requirements." *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. at 693, quoting from *Commonwealth* v. *DeCotis*, 366 Mass. at 244 n.8.

3. *Conclusion.* Because we conclude that BCBS committed a breach of its duty of good faith and fair dealing under G. L. c. 93A, we do not reach the plaintiff's claims of breach of contract and misrepresentation. See *Wolfberg* v. *Hunter*, 385 Mass. 390, 401 (1982) (where damages are awarded under c. 93A on facts intended to support concurrent claims for damages under other theories, recovery under the other claims would be duplicative). There is support in the record for the judge's findings regarding Green's G. L. c. 176D, § 3(9), claims. See *Doe* v. *Liberty Mut. Ins. Co.*, 423 Mass. 366, 372 (1996) (determination of what constitutes unreasonable delay is ordinarily left to the trier of fact). We do not address the question whether the trial judge abused his discretion in striking Green's requested rulings of law. His findings provide us with the "thought processes which led to his decision," *Lynn* v. *Nashawaty*, 12 Mass. App. Ct. 310, 315 (1981), and therefore are sufficient for the purposes of review on appeal. Although there is no support in the record for the judge's finding that the plaintiff requested individual consideration, there is considerable support for a finding that this was the appropriate process in the circumstances. None of the other findings of which the plaintiff complains is clearly erroneous.

The order of the Appellate Division dismissing the appeal is vacated. A new judgment shall enter for the plaintiff on her claim pursuant to G. L. c. 93A. The case is remanded to the District Court for further proceedings on the issue of damages and attorney's fees pursuant to G. L. c. 93A, § 9. The judge may reopen evidence for this purpose or may act on the existing record. See *Sidney Binder, Inc.* v. *Jewelers Mut. Ins. Co.*, 28 Mass. App. Ct. 459, 467 (1990).

*So ordered.*