NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-289                                            Appeals Court

COMMONWEALTH  vs.  DOMINGO CASTILLO.

No. 15-P-289.

Suffolk.     January 20, 2016. - July 25, 2016.

Present:  Trainor, Agnes, & Massing, JJ.

Controlled Substances.  Practice, Criminal, Motion to suppress,
      Findings by judge, Interlocutory appeal.  Probable Cause.

Complaint received and sworn to in the Roxbury Division of
the Boston Municipal Court Department on July 25, 2013.

A pretrial motion to suppress evidence was heard by Debra
Shopteese, J.

An application for leave to prosecute an interlocutory
appeal was allowed by Geraldine S. Hines, J., in the Supreme
Judicial Court for the county of Suffolk, and the case was
reported by her to the Appeals Court.

Cailin M. Campbell, Assistant District Attorney, for the
Commonwealth.
Bradford R. Stanton for the defendant.

TRAINOR, J.  The Commonwealth appeals from the allowance of

a motion to suppress evidence in the Roxbury Division of the

Boston Municipal Court.  The Commonwealth argues that three of

the judge's factual findings are clearly erroneous because they were not supported by the evidence presented at the suppression hearing. The Commonwealth also argues that the judge erred in allowing the motion to suppress because the police officer had probable cause to believe that the defendant had sold heroin to another individual. We vacate and remand.

Background. "We summarize the facts found by the motion judge following the evidentiary hearing, supplemented where necessary with undisputed testimony that was implicitly credited by the judge." Commonwealth v. Oliveira, 474 Mass. 10, 11 (2016).[1]

Officer Shawn Grant[2] testified that on the afternoon of July 24, 2013, he saw two individuals, later identified as Cesar Caban and James Niemczyk, on Washington Street in the Roxbury section of Boston walking back and forth while talking on cellular telephones (cell phones). Officer Grant alerted other officers in the area of the behavior and parked his unmarked police vehicle on the same side of Washington Street as the two individuals. After about fifteen minutes, Officer Grant saw the

---

[1] The summary of the facts, pursuant to this directive, is difficult under the very unusual circumstances of this case. Under these unique circumstances we have attempted to follow the teaching and mandate of Commonwealth v. Jones-Pannell, 472 Mass. 429, 436-438 (2015).

[2] A sixteen-year veteran of the Boston police department and a member of its drug control unit.

defendant cross Washington Street walking toward Caban and Niemczyk, who were now standing near a tree, and place an item into a residential mailbox[3] not more than twenty-five feet from the tree. The defendant then walked to the tree and took money which Caban had wedged into the branches. Caban then walked to and reached into the mailbox and removed an item from inside. Officer Grant reported what he had witnessed to the nearby officers. Based on his training and experience, he believed he had witnessed a drug transaction.

Officer Grant followed the defendant to where he entered the passenger side of a parked automobile while other officers observed Caban and Niemczyk. Officer Grant heard over the radio that the other officers had stopped Caban and had found one plastic bag containing heroin on him. After Officer Grant heard this, he stopped the automobile with the defendant in it and placed the defendant under arrest for distribution of a class A substance (heroin, in violation of G. L. c. 94C, § 32[a]). During a search incident to arrest of the defendant, Officer Grant found two cell phones on him and a total of $680 -- $630 in one pocket, and fifty dollars in the other.

---

[3] The judge found that Officer Grant could not see the mailbox at all. The judge stated, "[H]e stated candidly to the court that he could not see the mailbox from the position that he was parked in." As discussed later, this finding is clearly erroneous based on the testimony, as credited, given by Officer Grant.

Discussion. a. Judge's findings. When reviewing a motion to suppress, "we adopt the motion judge's factual findings absent clear error." Commonwealth v. Isaiah I., 450 Mass. 818, 821 (2008), citing Commonwealth v. Catanzaro, 441 Mass. 46, 50 (2004). "We take the facts from the judge's findings following a hearing on the motion to suppress, adding those that are not in dispute, and eliminating those that, from our reading of the transcript, are clearly erroneous." Commonwealth v. Wedderburn, 36 Mass. App. Ct. 558, 558-559 (1994). "A finding is clearly erroneous when 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" Green v. Blue Cross & Blue Shield of Mass., Inc., 47 Mass. App. Ct. 443, 446 (1999), quoting from Springgate v. School Comm. of Mattapoisett, 11 Mass. App. Ct. 304, 309-310 (1981).

The motion judge heard testimony from a single witness, Officer Grant, and after counsels' arguments, made oral findings and rulings. The judge both explicitly and implicitly credited the testimony of Officer Grant and based her ruling on what she believed he had said.[4] Here, the Commonwealth argues that the judge's factual findings, upon which her legal conclusions are

---

[4] The judge explicitly credited the testimony by stating that the officer had testified "candidly," and implicitly credited the testimony by basing her findings (albeit unsupported) on that testimony.

based, are clearly erroneous.  See Commonwealth v. Thomas, 429 Mass. 403, 405 (1999) ("motion judge's findings of fact are binding in the absence of clear error").

    1.  Officer Grant's view of the mailbox.  The judge stated in her findings that "Officer Grant had a hunch that something was placed in the mailbox, but he stated candidly to the court that he could not see the mailbox from the position that he was parked in; he was between the store and the doorway where the mailbox is situated, apparently, or mailboxes, and he could not actually see into the doorway where the mail drop or mailboxes are, so he could not see whether the defendant put anything in the box, mailed anything, took anything from the box.  Officer Grant simply was not able to observe this."[5]  Officer Grant's testimony on direct examination, however, was significantly different.  The prosecutor asked:  "[Y]ou said that you saw the defendant place something in a mailbox?"  Officer Grant answered:  "Yes, an open or broken mailbox, I should say."  The prosecutor continued:  "Do you recognize this?"  Officer Grant answered:  "[I]t looks like the mailbox that he placed an item in.  I'm not sure if that's the exact mailbox."  After some discussion about the size of the item placed in the mailbox, the prosecutor returned to the question of Officer Grant's ability

_____

[5] We consider this statement by the judge to be explicitly crediting Officer Grant's testimony while, at the same time, not being supported by his actual testimony.

to observe the mailbox.  The prosecutor asked:  "[W]here were you when you saw the defendant place the item in the mailbox?"  Officer Grant responded:  "I wasn't exactly in front of the mailbox, I was away . . . f[a]rther away from the mailbox."  In response to the prosecutor's question, "About how far away?" the officer responded, "Ten feet."

Defense counsel vigorously cross-examined Officer Grant regarding his ability to observe the mailbox and whether he could see exactly what the item was that the defendant placed into it and what later was removed from it.  Defense counsel asked Officer Grant if he inspected the mailbox after the alleged buyer removed the item placed there by the defendant.  Officer Grant responded that he did inspect the mailbox and defense counsel followed by asking:  "Then you went to -- you went to the mailbox then?"  Officer Grant responded, "No, [I] looked in the mailbox from my vehicle; I didn't get out of my vehicle . . . [y]es, yes, I didn't get out of my vehicle."  Defense counsel asked again, "Okay.  And could you see the mailboxes?"  Officer Grant responded, "I could see the mailboxes, yes."  This was the only testimony regarding the mailbox offered at the hearing.[6]

---

[6] Defense counsel later asked Officer Grant whether, if someone had been standing in the doorway, his view of the mailbox would have been blocked.  There was, however, no evidence or testimony of anyone standing in the doorway.

The fact that the judge's finding was erroneous is clear, but equally significant is the fact that this testimony was not susceptible of more than one interpretation.  The judge made an explicit credibility determination of Officer Grant's testimony. See Commonwealth v. Alvarado, 423 Mass. 266, 268 n.2 (1996) ("The motion judge's findings do not incorporate all the testimony of the police officer who testified at the hearing on the motion to suppress . . . .  We . . . refer to the uncontroverted testimony of the police officer because we infer the motion judge accepted it in its entirety").  See also Commonwealth v. Yesilciman, 406 Mass. 736, 743 (1990) ("On a motion to suppress, the determination of the weight and credibility of the testimony is the function and responsibility of the [motion] judge who saw the witnesses, and not this court" [quotation omitted]); Commonwealth v. Scott, 52 Mass. App. Ct. 486, 492 (2001), S.C., 57 Mass. App. Ct. 36 (2003) and 440 Mass. 642 (2004).  The judge explicitly credited Officer Grant's testimony, and it was the only testimonial evidence offered at the hearing.  The officer's testimony was neither ambiguous nor susceptible of more than one interpretation, yet the judge's findings do not reflect his testimony and are clearly erroneous.[7]

---

[7] Nowhere in the record of the hearing does the judge discredit any of the officer's testimony.  We must infer therefore that all of the testimony had been credited.

2.  Caban and Niemczyk's view of the mailbox.  The judge next found that "the other two individuals, Caban and the third individual, were not in a position to see the mailbox at that time either.  There's no evidence that they were near the mailbox or could view the mailbox."  While Officer Grant did not testify how far away Caban and Niemczyk were from the mailbox, he did testify that they were on the same side of the street as the mailbox, "f[a]rther away from the mailbox . . . standing near a tree that was planted on the sidewalk."  He then testified that he was "[p]robably fifteen feet" away from the tree.  He testified further that he could clearly see that it was "money" that Caban put in the tree and that this occurred about "[t]wo seconds" after the defendant put the item into the mailbox.  The entire transaction observed and described by Officer Grant occurred in one to two minutes and consisted of the defendant placing an item in the mailbox, Caban placing money in the tree, the defendant walking to the tree and retrieving the money, and Caban walking to the mailbox and retrieving the item.  The defendant and Caban had to be standing close to each other in order to complete the transaction within the time frame described by Officer Grant.

3.  Sequence of events. Finally, and relatedly, the judge found that she did "credit that the money was put in the tree, between the tree branches, but . . . I don't know where the tree

branches were, really, what the location, whether the defendant was simply walking by the area. I don't know that the defendant walked directly to that area." Officer Grant, however, testified that he witnessed the defendant cross Washington Street, walk to the mailbox, and place something inside it. Within two seconds, Caban put money in the tree branches. The defendant then walked directly to the tree, which was within twenty-five feet of the mailbox, and retrieved the money. Caban then walked directly to the mailbox and took something out of it. Office Grant testified that the two men then went their separate ways. There is no basis in the record to support the judge's finding that the defendant did not walk directly to the mailbox and from the mailbox to the tree to retrieve the money. These facts, based on the uncontroverted testimony that the judge credited, require us to draw the inescapable inference that Caban or Niemczyk must have seen the defendant put the drugs in the mailbox or Caban would not have put the money in the tree. The judge's finding was clearly erroneous.

In allowing the motion to suppress, the judge concluded that her

> "primary concern [was] that the officer did not see the defendant place any item in the mailbox and that the other two individuals did not see the defendant place any item in the mailbox, nor were the individuals on the phone with each other confirming any kind of drop-off or anything of that nature.

"So, anything the officer did at that point was based on his hunch that a transaction had occurred, and the stop exceeded the permissible scope." (Emphasis added.)

The basis for the judge's allowance of the motion to suppress is not only clearly erroneous but is directly contradicted by the only evidence she heard, and credited, and which makes up the entire record.

Commonwealth v. Jones-Pannell, 472 Mass. 429 (2015), instructs us that we may only supplement a judge's findings when "additional facts [are] necessary to support the judge's conclusion, such as where the judge found the witnesses' testimony truthful and accurate." Id. at 437 (quotation omitted). Generally, we may not "revise a judge's subsidiary findings of fact," id. at 438, in order to reach a conclusion contrary to that reached by the judge. "[T]he mere absence of contradiction is not enough to permit supplementation with facts not found by the judge." Id. at 436. Similarly, we should not supplement a "judge's findings of fact with evidence in the record that was not included in the judge's findings, and as to which the judge made no statement of credibility, on the assertion that the judge implicitly credited that testimony." Id. 436-437. "In the absence of findings on a critical issue . . . or where the facts as found are susceptible of more than one interpretation, and there is additional evidence in the

record, neither implicitly credited nor discredited by the judge, remand may be appropriate." Id. at 437 (quotation omitted). See Commonwealth v. Isaiah I., 448 Mass. 334, 338-339 (2007), S.C., 450 Mass. 818 (2008). Ultimately, it is never appropriate for an appellate court "to engage in what amounts to independent fact finding in order to reach a conclusion of law that is contrary to that of a motion judge who has seen and heard the witnesses, and made determinations regarding the weight and credibility of their testimony." Commonwealth v. Jones-Pannell, 472 Mass. at 438.[8] However, we do not accept the judge's subsidiary findings of fact that are clearly erroneous when evaluating the judge's ultimate findings and conclusions of law. Ibid.

In consideration of these clear and explicit directives, and notwithstanding the singular and unique circumstances of this case, we are compelled to remand this matter for the motion judge to correct these errors.

There is nothing in Officer Grant's testimony that is either ambiguous or susceptible of a different interpretation. The judge specifically credited the testimony of the witness, and then made findings unsupported by that testimony. There is

---

[8] Jones-Pannell also makes emphatically clear that we should not assume that the judge implicitly credited testimony that contradicts the judge's ultimate legal conclusion simply because only one witness has testified at a motion hearing, and the testimony is therefore "uncontroverted." 472 Mass. at 438.

no question of the credibility or the weight given to the witness's testimony and there is no contradictory testimony to which to compare it. The testimony stands on its own and in stark contrast to the judge's actual erroneous findings. Under these unique circumstances, we are directing the judge to correct these errors, upon remand, to comport with the clear, unambiguous, uncontroverted and credited evidence offered at the hearing.[9]

b. <u>Probable cause</u>. In addition, the motion judge erred in ruling that Officer Grant lacked probable cause to believe that the defendant had sold heroin to Caban. The judge concluded that "while the police might have had enough to make a threshold inquiry in this situation, there was certainly not enough to make an immediate arrest as was done here." The judge reached this conclusion when she found that Officer Grant had not seen the exchange of drugs for money. However, this legal conclusion is erroneous because our case law does not require an officer to see the item exchanged in order to create a reasonable suspicion, or even probable cause, to believe that a drug transaction has occurred. See <u>Commonwealth</u> v. <u>Kennedy</u>, 426 Mass. 703, 710 (1998) (declining to "adopt a per se rule that an

---

[9] For the purpose of this analysis, we assume, of course, that the judge, on remand, continues to credit the officer's testimony and does not make an explicit finding discrediting some or all of that testimony.

officer must actually see an object exchanged . . . before he has sufficient evidence supporting probable cause to arrest"). In Kennedy, the court reasoned that, "[g]iven the practical consideration of the small size of packages of drugs, which are capable of being concealed within a closed hand, we would critically handicap law enforcement to require in every circumstance that an officer not only witness an apparent exchange, but also see what object was exchanged, before making a search incident to an arrest." Id. at 711. "Probable cause may be established where the 'silent movie' observed by an experienced narcotics investigator reveals 'a sequence of activity consistent with a drug sale . . . .'" Commonwealth v. Stewart, 469 Mass. 257, 262 (2014), quoting from Commonwealth v. Santaliz, 413 Mass. 238, 242 (1992).[10] The "silent movie" actually depicted in this case consisted of the following observations made and testified to by Officer Grant: Caban and Niemczyk pacing back and forth while talking on cell phones, the defendant placing an item in a mailbox near Caban, Caban looking at the defendant, Caban then placing money in a tree branch, the defendant retrieving the money from the tree branch, Caban retrieving the item from the mailbox, both men leaving in

---

[10] Here, the totality of the judge's erroneous findings would have depicted a "silent movie" significantly different from the one that actually occurred according to the officer's testimony.

different directions, and other officers radioing Officer Grant to inform him that Caban had been stopped and found with heroin. This was sufficient for Officer Grant, based on his training and experience, to have probable cause to arrest the defendant.  See Commonwealth v. Gullick, 386 Mass. 278, 283 (1982) ("Probable cause to arrest exists when, at the moment of arrest, the facts and circumstances known to the police officers were sufficient to warrant a person of reasonable caution in believing that the defendant had committed or was committing a crime").

Conclusion.  Because the judge's findings were clearly erroneous based on the uncontroverted evidence at the suppression hearing, the suppression order must be vacated and the matter remanded.  On remand, the judge shall make findings that comport with the hearing testimony she credits, and she shall make explicit any testimony she does not credit.

So ordered.