The defendant, Steven Stephen, appeals from his convictions of one count of unlawful possession of a firearm, one count of unlawful possession of a loaded firearm, and an armed career criminal enhancement.[3] We affirm.
Background. The following facts are drawn from the motion judge's decision and order, with additional details reserved for discussion of the issues. In January, 2014, Boston police began investigating the defendant and another individual, Tony Evans, regarding unlawful firearm possession. Police received tips from two "carded" informants. As "carded" informants, their identities were known to the Boston police and they were "registered" with the police.
The first confidential informant (CI-A) told police that they[4] had seen both the defendant and Evans in possession of firearms and that each had a firearm on his person. CI-A previously provided information to Boston police that led to the recovery of contraband and an arrest and conviction. Based on this tip, the police stopped a vehicle in which the defendant was riding but found no firearm.
On February 7, 2014, police received a tip from a second informant (CI-B). CI-B told the officers that they had personally seen the defendant and Evans in possession of a firearm in a car that day, a "couple of hours" before the stop. They reported that Evans and the defendant were in a specific car in Mattapan.
On February 7, Detective Brian Smigielski observed a Honda and recognized the defendant and Evans as passengers. He did not recognize the driver. The detective's observations of the timing, location, and description of the vehicle were consistent with CI-B's tip. Additionally, the detective knew that the defendant had prior convictions for unlawful firearm possession and felony assault, and that the defendant did not have a license to carry a firearm. He also had knowledge of prior incidents involving the two men, one where the defendant and Evans were present and a firearm was recovered from a motor vehicle or from another person present, and a second where Evans was present and a firearm was recovered from a vehicle or from another person present. He also had knowledge of the stop conducted after CI-A's tip.
Shortly after Detective Smigielski observed the Honda, an unmarked police cruiser drove in front of the Honda and waited in traffic to make a left turn. The Honda stopped behind the unmarked cruiser to wait for it to turn. Simultaneously, several officers, including Detective Smigielski and Officer Brian Ball, left their vehicles and approached the Honda. As the police approached on foot, the defendant was seen to be moving in the right front seat of the Honda. Officer Ball was concerned, based on his training and experience with gun recoveries and arrests, that the defendant had a firearm. Officers ordered the occupants to show their hands and removed the defendant from the vehicle. Officers then observed a firearm in plain view "on one of the Honda's seats." In findings on a subsequent motion, the same judge found that "[t]he gun was found on the right front seat immediately upon officers getting the [defendant] off that seat." He also found that "[i]t is not implausible that Evans had the gun [and] put it on the [defendant's] seat while the officers approached the car."
Discussion. 1. Motion to suppress. When considering a ruling on a motion to suppress, we must accept the motion judge's subsidiary findings of fact, absent clear error. Commonwealth v. Carr, 458 Mass. 295, 298 (2010). We independently review the ultimate findings and conclusions of law. Commonwealth v. Scott, 440 Mass. 642, 646 (2004).
a. Challenged findings. The defendant contends that three of the motion judge's findings are clearly erroneous. "A finding is clearly erroneous when 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " Commonwealth v. Castillo, 89 Mass. App. Ct. 779, 781 (2016), quoting from Green v. Blue Cross & Blue Shield of Mass., Inc., 47 Mass. App. Ct. 443, 446 (1999).
First, the defendant challenges the motion judge's finding that the officers had Edith White get out of the Honda. The Commonwealth concedes that there was no testimony at the motion hearing supporting this finding. Nonetheless, the challenged finding has no bearing on the issues on appeal.
Second, the defendant challenges the finding that "[t]he Honda paused briefly waiting for the unmarked police car to make its left turn." He contends that this finding was erroneous because the Honda was "unable to go around" the unmarked police cruiser. We discern no basis for concluding that this finding is clearly erroneous because the unmarked police cruiser in front of the Honda was simply waiting to make a routine left-hand turn. Moreover, there was no indication in the record that the turn took an inordinate amount of time to execute, nor was there any basis in the record for the defendant to believe that the unmarked cruiser was part of the surveillance team.
Third, the defendant challenges the finding that Officer Ball observed the defendant "moving around in the right front seat, moving his arms and keeping his hands in his crotch" and argues that the finding contradicts the officer's testimony. Although Officer Ball testified that he could not see the defendant's hands, Detective Smigielski testified that he observed the defendant "moving around in the front seat" and that the defendant was removed from the vehicle because "[t]he officers that approached from the front observed Mr. Stephens moving his hands down toward his crotch area." While the motion judge may have identified the wrong police personnel, given the entirety of the testimony, we cannot conclude that the substance of the finding about the defendant's furtive movements is clearly erroneous.
b. Seizure of the defendant. The motion judge ruled that the defendant was seized "when the officers on foot reached the doors of the Honda and told all occupants to show their hands." The Commonwealth agrees. The defendant contends that he was seized prior to the order to show his hands; he argues that he was seized when the police positioned their vehicles to prevent the Honda from moving and then got out of their vehicles to advance on the Honda from different positions. We need not decide this issue because, even assuming the defendant is correct about when the seizure occurred, we conclude that the officers had reasonable suspicion at that time.[5]
A stop of a vehicle is proper if it "was predicated on 'reasonable suspicion, based on specific, articulable facts and reasonable inferences therefrom, that an occupant of the ... motor vehicle had committed, was committing, or was about to commit a crime.' " Commonwealth v. Edwards, 476 Mass. 341, 345 (2017), quoting from Commonwealth v. Alvarado, 423 Mass. 266, 268 (1996). Where an investigatory stop is based on a tip supplied by a confidential informant, that tip must establish both the reliability and basis of knowledge prongs set forth under the Aguilar-Spinelli test.[6] Since the information here was used to execute an investigatory stop requiring reasonable suspicion rather than probable cause, "a less rigorous showing in each of these areas is permissible" and "independent police corroboration may make up for deficiencies in one or both of these factors." Commonwealth v. Pinto, 476 Mass. 361, 364 (2017) (quotations omitted).
CI-A demonstrated both veracity and the basis of knowledge of their tip. Their basis of knowledge was established by personal knowledge that they saw the defendant and Evans with a firearm. See Alvarado, supra at 271 (anonymous caller's recent firsthand observation satisfies basis of knowledge test). Contrast Commonwealth v. Bottari, 395 Mass. 777, 784 (1985) (no probable cause where informant did not tell officers he personally saw defendant and description of criminal activity did not rise above a "casual rumor"). Additionally, CI-A had demonstrated sufficient veracity, as they previously provided information that led to the recovery of contraband and an arrest and conviction. See Commonwealth v. Perez-Baez, 410 Mass. 43, 44-46 (1991) (informant's veracity established by his prior information that led to arrest and seizure of contraband).
CI-B similarly demonstrated an adequate basis of knowledge, as their tip also was based on personal knowledge that the defendant and Evans possessed a firearm in a specific vehicle on that day. The Commonwealth concedes on appeal that the Commonwealth only offered testimony at the motion hearing about CI-A's history of providing information. Nevertheless, even if CI-B's veracity was not yet established at the time of the tip, CI-A's tip corroborated it. See Commonwealth v. Watson, 36 Mass. App. Ct. 252, 256-257 (1994), and cases cited ("The informants' mutually corroborative information, buttressed by the information gathered during police surveillance, provided probable cause for the search").
Furthermore, the police corroborated details of CI-B's tip, including observing the defendant and Evans together in the specific vehicle that CI-B identified only "a couple of hours" before the stop in the area CI-B identified. See ibid. Detective Smigielski also had personal knowledge of both the defendant and Evans's past history of weapons-related incidents, including the defendant's prior convictions for unlawful firearm possession. See Commonwealth v. Mendez, 476 Mass. 512, 518 n.7 (2017) ("[P]olice knowledge that a criminal history includes weapons-related charges can add to reasonable suspicion"). In its totality, the officers had sufficient information to form a reasonable suspicion that the defendant and Tony Evans unlawfully possessed a firearm at the time of the stop.
2. Motion for disclosure. The defendant also contends that the motion judge erred in ordering an in camera hearing with CI-B and assigning them counsel before denying the motion for disclosure.
a. In camera hearing. When a defendant requests disclosure of a confidential informant's identity, the defendant "is required to present some offering so that the trial judge may assess the materiality and relevancy of the disclosure to the defense, if that relevancy is not apparent from the nature of the case and the defense offered thereto." Commonwealth v. Bonnett, 472 Mass. 827, 847 (2015) (quotation omitted). "In a case where it is not clear from the record that disclosure of an informant's identity would provide something material to the defense, a judge may hold an in camera hearing to assist in making that determination." Commonwealth v. Dias, 451 Mass. 463, 472 (2008).
The burden remained on the defendant to make an initial showing of materiality. The defendant's motion only vaguely asserted that CI-B's identity and information "is relevant and helpful to the defense of an accused." In the affidavit supporting the motion, defense counsel asserted that disclosure "is necessary to establish who entered the vehicle with a firearm," that it was necessary for the defendant to present his defense, and that failure to allow disclosure would permit the Commonwealth to elicit testimony that may be in direct contradiction to the information provided to the police. These speculative assertions were insufficient to compel disclosure. Contrast id. at 469 (informant's information conflicted with anticipated testimony). Because the defendant's initial showing was not clear that CI-B would provide something material to the defense, the judge did not abuse his discretion in ordering an in camera hearing. Id. at 472. Once the defendant failed to carry the necessary burden, even with the added benefit of an in camera hearing, the judge properly denied the defendant's motion.
b. Appointment of counsel. The defendant also contends that the motion judge erroneously appointed counsel to CI-B when they requested counsel when questioned by the judge about the events of February 7, 2014.
"The nature of the in camera hearing is left to the discretion of the judge, who may, in light of the particular facts, determine whether the presence of counsel is necessary or appropriate." Id. at 472 n.15. "Whether the informant could assert a valid Fifth Amendment privilege if called as a witness at trial is a distinct issue from whether the informant's identity must be disclosed before trial." Id. at 473.
The motion judge's decision explicitly stated that he denied disclosure "without considering any potential Fifth Amendment privilege of [CI-B]." Because the appointment of counsel did not interfere with the defense, we discern no abuse of discretion in the judge's order.
3. Jury instruction. Lastly, the defendant argues that the trial judge erred in instructing the jury on joint possession. The Commonwealth was not required to prove that the defendant exclusively possessed the firearm, and so the instruction was not erroneous. See Commonwealth v. Duncan, 71 Mass. App. Ct. 150, 154 (2008) ("[T]he Commonwealth was not required to prove that the possession was exclusive, and instead could be accomplished jointly among the defendants").[7]
Judgments affirmed.

The jury found the defendant not guilty of one count of possession of firearm with a defaced serial number. The docket also reflects that the jury found the defendant not guilty of one count of possession of a sawed-off shotgun. The parties agree and the trial transcript reflects that instead, the jury found the defendant not guilty of one count of possession of ammunition.

We use "they" as a singular pronoun for each informant for convenience because the genders of the confidential informants were not revealed at the motion hearing.

There was no evidence that the persons in the Honda knew the vehicle in front of them (waiting to turn left) was an unmarked police car. Without such evidence, it is questionable that a reasonable person would have known he was in an encounter with the police, let alone whether he would believe that he was not free to leave that encounter. See Commonwealth v. Barros, 435 Mass. 171, 173-174 (2001) ("Police have seized a person in the constitutional sense only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave" [quotation omitted] ).

See Aguilar v. Texas, 378 U.S. 108 (1964) ; Spinelli v. United States, 393 U.S. 410 (1969).

To the extent that we do not address the defendant's other contentions, they "have not been overlooked. We find nothing in them that requires discussion." Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).