NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-837

COMMONWEALTH

vs.

PHARREL P., a juvenile.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury-waived trial, the juvenile was adjudicated delinquent for carrying a firearm without a license in violation of G. L. c. 269, § 10 (a), and carrying a loaded firearm in violation of G. L. c. 269, § 10 (n).[1] As a result, the judge committed the juvenile on both counts to the Department of Youth Services until the age of eighteen. On appeal, he claims that the motion judge made certain clearly erroneous findings of

---

[1] A third charge for possession of ammunition without a firearm identification (FID) card was dismissed at the Commonwealth's request.

fact, and that she erred in denying his motion to suppress.[2]  We affirm.

1.  Challenged findings of fact.  The first factual finding the juvenile claims to be clearly erroneous is the motion judge's finding that the patfrisk of the vehicle began after the exit order issued.  We disagree.

When reviewing a motion to suppress, "we adopt the motion judge's subsidiary findings of fact absent clear error." Commonwealth v. Catanzaro, 441 Mass. 46, 50 (2004).  "We take the facts from the judge's findings following a hearing on the motion to suppress, adding those that are not in dispute, and eliminating those that, from our reading of the transcript, are clearly erroneous."  Commonwealth v. Castillo, 89 Mass. App. Ct. 779, 781 (2016), quoting Commonwealth v. Wedderburn, 36 Mass. App. Ct. 558, 558-559 (1994).  "A finding is clearly erroneous when 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'"  Castillo, supra, quoting Green v. Blue Cross & Blue Shield of Mass., Inc., 47 Mass. App. Ct. 443, 446 (1999).  "Our review of the application of constitutional principles to those facts,

---

[2] The motion judge was not the trial judge.

2

however, is plenary" (citation omitted).  Commonwealth v.

Cawthron, 90 Mass. App. Ct. 828, 833 (2017), S.C., 479 Mass. 612

(2018).

Here, the motion judge found that the exit order was issued

to all occupants of the car, and that "they would be asked to

get out of the vehicle one by one and pat frisked."  Prior to

this, as the motion judge found, Sergeant Detective Steven

Romano approached the driver and asked for her license and

registration, and the driver indicated it was in back of the

car.  Romano asked her to retrieve it.  The driver then got out

of the car, opened the trunk to retrieve a bag containing her

identification, and provided it to Romano.  The body-worn camera

video footage (footage) also reflects that this occurred prior

to the exit order and patfrisk.

The footage also reflects that Officer Curtin, through the

open trunk, asked the occupants in the back seat of the car for

their identification.  The trunk had been left open by the

driver when she retrieved her license and registration.

Although the footage shows Curtin's hand briefly skim or touch

two bags in the car's open storage area, we need not resolve

whether this constituted a patfrisk of the bags in any

constitutional sense of the term.  At bottom, even if Curtin did

3

pat frisk the bags,[3] the police gained no further information from that conduct to bolster what we conclude below was the then extant reasonable suspicion that an improperly stored firearm was in the car.[4]

The juvenile also claims the motion judge's findings are clearly erroneous as to the sequence of events leading to the exit order.  In particular, the juvenile claims that the "officers were going to search the vehicle and its occupants pursuant to a criminal investigation as soon as they pulled the vehicle over."

The motion judge found that the exit order was based on the "live" Snapchat photograph posted in a "story" that occurred fewer than thirty minutes prior to the stop.  That photograph depicted a firearm with a magazine fully inserted that was

---

[3] Curtin did testify that he conducted a "quick pat frisk" by feeling "the outermost portion" of two bag or backpacks. However, the motion judge did not make this legal conclusion.

[4] The juvenile also challenges the finding of fact that the exit order and patfrisk were due in part to officers' alarm at the passengers' lack of response to Romano's questions.  We disagree.  The motion judge did not rely on this finding to explain the justification for the exit order and patfrisk of the passengers.  Regardless, this finding is not clearly erroneous where there was testimony that Romano asked the passengers twice if there were any weapons in the car, and the officers observed no initial response from the passengers.  In addition, the footage supports that the exit order and patfrisks occurred after Romano asked this question and also after the officers received no initial response to the question.

4

improperly stored in a pocket or bag, without a safety device. One minute prior to this live photograph, another live photograph of D.C. was posted. Seven minutes after this live photograph was posted, another live photograph was posted that depicted the inside of a gym the police recognized. Within approximately fifteen minutes, the police saw the car that contained the juvenile (and eight others), leave the gym and drive away. Before being stopped by the police, at an intersection, the officers identified D.C. in the front seat of the car.

The motion judge further found that after the car was stopped, the officers realized that it was J.J.'s Snapchat account on which the loaded, improperly stored firearm was displayed, and he was also in the car. The juvenile was seated in the rear of the vehicle, and he was identified from a "fresh" post on the Snapchat account. It was all these facts, that Officer Curtin testified to, expressly credited by the motion judge, and not just the facts known prior to the stop, that gave officers reasonable suspicion that the improperly stored firearm was in the car, or on one of the occupants' persons.

2. Duration of stop. The juvenile also claims the motion judge erred in denying the motion to suppress because the Commonwealth failed to meet its burden of establishing

reasonable suspicion of criminal activity to justify prolonging the stop after the motor vehicle violation investigation had concluded.  We disagree.

"A valid investigatory stop cannot last longer than reasonably necessary to effectuate the purpose of the stop.  The scope of a stop may only extend beyond its initial purpose if the officer is confronted with facts giving rise to a reasonable suspicion that further criminal conduct is afoot" (quotations and citations omitted).  Commonwealth v. Tavares, 482 Mass. 694, 703 (2019).  See Commonwealth v. Daveiga, 489 Mass. 342, 350-351 (2022).  In circumstances where a police officer receives information concerning an individual with a gun, the "test for determining reasonable suspicion should include consideration of the possibility of the possession of a gun, and the government's need for prompt investigation."  Commonwealth v. Stoute, 422 Mass. 782, 791 (1996), quoting United States v. Bold, 19 F.3d 99, 104 (2d Cir. 1994).

Here, as the motion judge found, the stop of the car was lawful after police witnessed the traffic infraction.[5]  After the driver provided her license and registration, further inquiry was justified because, as outlined above, the police had a

_____

[5] The juvenile does not dispute that the police were authorized to stop the car.

6

reasonable suspicion that one of the occupants of the car was carrying an improperly stored firearm. Each step taken by the police was proportional to the degree of suspicion they possessed. See Commonwealth v. Torres, 433 Mass. 669, 672 (2001), overruled in part on other grounds, Commonwealth v. Torres-Pagan, 484 Mass. 34, 38 (2020). See also Commonwealth v. Sinforoso, 434 Mass. 320, 323 (2001) (officers' actions "proportional to the escalating suspicion that emerged over the course of the stop"). Finally, as the motion judge properly determined, in light of how recently the Snapchat postings had occurred, the danger presented to public safety by a concealed firearm, and the officers' collective experience, the police were entitled to expand the scope of their investigation without running afoul of rights of the occupants of the car.

3. Exit order. The juvenile further claims that the motion judge erred by concluding that the police were justified in issuing an exit order based on a concern of officer safety.[6] We disagree.

_____

[6] The juvenile also claims that the judge erred in finding the exit order was justified based on reasonable suspicion of criminal activity apart from the offense of the driver. Given our resolution of the legality of the exit order on other grounds, we do not address this argument.

7

The reasonableness of the particular conduct at issue here is controlled by Commonwealth v. Gonsalves, 429 Mass. 658 (1999), where the Supreme Judicial Court determined that "art. 14 requires that a police officer, in a routine traffic stop, must have a reasonable belief that the officer's safety, or the safety of others, is in danger before ordering a driver out of a motor vehicle." Id. at 662-663. Stressing the leniency of this test, the court emphasized that "it does not take much for a police officer to establish a reasonable basis to justify an exit order or search based on safety concerns." Id. at 664. See Torres-Pagan, 484 Mass. at 38. "A police officer need point only to some fact or facts in the totality of the circumstances that would . . . warrant an objectively reasonable officer in securing the scene in a more effective manner." Commonwealth v. Rosado, 84 Mass. App. Ct. 208, 212 (2013).

Here, as the motion judge properly determined, based on the information discussed above, the police had reasonable suspicion that the improperly stored firearm depicted on the Snapchat story was in the possession of one of the occupants of the car. See Commonwealth v. Stampley, 437 Mass. 323, 328 (2002) ("The justification for an exit order does not depend on the presence of an 'immediate threat' at the precise moment of the order, but

8

rather on the safety concerns raised by the entire circumstances of the encounter").  Given the totality of circumstances that had been uncovered in the short time frame from the initial Snapchat post to the stop of the car, a reasonable prudent person in the officers' position would be concerned for his or another officer's safety.  Accordingly, the exit order was justified.[7]  See Commonwealth v. San, 63 Mass. App. Ct. 189, 193 (2005).  See also Commonwealth v. Haskell, 438 Mass. 790, 794 (2003) ("The Constitution does not require officers to gamble with their personal safety" [quotation and citation omitted]).

4.  Patfrisk.  Finally, the juvenile claims that the motion judge erred by concluding that there existed reasonable suspicion that the juvenile was armed to justify his patfrisk.  We disagree.[8]

---

[7] Relying on an unpublished decision by a panel of this court, the juvenile claims that any delayed or lack of response to Romano's question regarding the presence of a gun does not add to a safety concern because the occupants were not required to respond.  However, as noted above, the motion judge did not rely on that silence in her analysis, and properly found the exit order was justified apart from it.

[8] For the first time on appeal, the juvenile also challenges the patfrisk of the other occupants of the car.  He did not raise this issue in his motions to suppress, or in his supporting affidavits, and the matter was not addressed in the motion judge's decision.  In this posture, the juvenile has waived this claim.  See Mass. R. Crim. P. 13 (a) (2), as appearing in 442 Mass. 1516 (2004).  Also, the record here is not adequate to resolve the issue.  See Commonwealth v. Santos, 95 Mass. App. Ct. 791, 797-798 (2019).  At the very least, the

9

Once a suspect has been lawfully seized, "a patfrisk is permissible only where an officer has reasonable suspicion that the suspect is armed and dangerous." Torres-Pagan, 484 Mass. at 36, citing Arizona v. Johnson, 555 U.S. 323, 326-327 (2009). "[The officer] must have a reasonable suspicion, based on specific articulable facts, that the suspect is armed and dangerous." Torres-Pagan, supra at 38-39.

Here, as the motion judge found, when the exit order was issued, the juvenile stood up from his seat, and Romano saw, in plain view, the dark brown handle of a firearm sticking out of his waistband. See Commonwealth v. Little, 16 Mass. App. Ct. 959, 959-960 (1983). Based on this observation, Romano had far more than reasonable suspicion that the juvenile was in possession of an improperly stored firearm and a reasonable

juvenile did not establish, or even allege, that he had -- or how he had -- a reasonable expectation of privacy in what, if anything, was obtained as a result of the other patfrisks. See Commonwealth v. Delgado-Rivera, 487 Mass. 551, 554-555 (2021), cert. denied, 142 S. Ct. 908 (2022). See also Commonwealth v. DeJesus, 489 Mass. 292, 298 (2022) (juvenile "bears the burden of demonstrating that he or she personally has an expectation of privacy in the place searched, and that this expectation is reasonable" [citation omitted]).

apprehension of danger based on his observation of that firearm. See Commonwealth v. Powell, 459 Mass. 572, 578 (2011), cert. denied, 565 U.S. 1262 (2012).  The patfrisk was proper.

Adjudications of delinquency
  affirmed.

By the Court (Meade,
  Massing & Brennan, JJ.[9]),

Clerk

Entered:  March 6, 2026.

---

[9] The panelists are listed in order of seniority.